Gerbrile Dwayne DAVIS, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–05–00325–CR.

Court of Appeals of Texas, Houston (14th Dist.).

May 18, 2006.

Allen C. Isbell, Houston, for appellant.

Carmen Castillo Mitchell, Houston, for appellee.

Panel consists of Chief Justice HEDGES and Justices YATES and GUZMAN.

## MAJORITY OPINION

LESLIE BROCK YATES, Justice.

Appellant Gerbrile Dwayne Davis was convicted of aggravated robbery and sentenced to twenty-seven years' impris-

onment. In twelve issues, appellant challenges his conviction. Because we conclude the trial court committed reversible error by forcing appellant to wear handcuffs during the trial, we reverse and remand for a new trial.

## BACKGROUND

On July 7, 2004, Moserrat Rubio parked her van in front of a water station in a grocery store parking lot and began filling her water jugs. She was then robbed at knife point, and her van was stolen. A few hours later, appellant was arrested after he was seen driving the stolen van. Police conducted a line-up, but Rubio was unable to identify appellant.

In a videotaped statement to police, appellant admitted that he was present during the crime but claimed that his friend Dustin Williams, not he, robbed Rubio. Appellant also admitted that the knife used in the robbery, which was found in the van, was his knife but claimed he loaned it to Williams "to take care of some business." However, Rubio testified that she saw only one person when she was robbed, and police could never locate Williams. At trial, Rubio identified appellant as her robber. The State offered appellant's videotaped statement into evidence, which was played in full to the jury. Appellant testified and again blamed the robbery on Williams. The jury instructions authorized the jury to find appellant guilty either as a principal or a party. The jury found appellant guilty.

On appeal, appellant raises twelve issues. The first three relate to the whether the trial judge erred by ordering that appellant be handcuffed during a portion of the trial. In issues four through eight, appellant complains the trial court erred in submitting an instruction on the law of parties and challenges the legal and factual sufficiency of the evidence to convict him

either as a principal or a party. In issues nine through eleven, appellant asserts the trial court erred in denying various motions relating to Rubio's inability to identify him during the police line-up. In his final issue, appellant claims the trial court erred in allowing the prosecutor to ask appellant's opinion on the credibility of some of the State's witnesses.

## HANDCUFFING APPELLANT DURING TRIAL

On the morning of the third day of trial, the trial court judge, William Harmon, ordered that appellant be handcuffed for the remainder of the trial. Appellant's counsel objected that this would violate appellant's due process rights and interfere with effective attorney-client communication. Counsel explained that he always instructed his clients to communicate with him during trial by writing notes rather than talking, which distracted him from the trial proceedings, and that appellant would be unable to write without exposing his handcuffs to the jury. Counsel also asked Judge Harmon to articulate on the record a basis for ordering handcuffs because counsel had seen no evidence that appellant presented a security risk. Judge Harmon agreed that "[t]here's been no specific evidence presented to this Court that your client in particular has demonstrated any kind of additional security risk." However, Judge Harmon explained that he had learned through the news media that the previous day, an inmate in San Francisco stabbed his counsel with a sharpened toothbrush. Judge Harmon then announced a new security policy:

> The Court is of the opinion this is going to be a general change in courtroom security, where people who are accused of felony offenses who are facing, as in this case, a minimum of 15 years in prison to life in prison, are to be secured

during trial. Their hands are to be secured, [and] they're not to have access to any writing materials during trial.

The Court considers those to be deadly weapons, and so this is a general plan by the [C]ourt to increase the security in the courtroom while jurors are present.

Judge Harmon ordered a bailiff to remove from appellant's hand a pen his attorney had given him to write notes. He further described various measures he would take to ensure that jurors did not see the handcuffs, including having appellant and others remain seated when jurors entered the courtroom and removing the handcuffs before appellant testified. Judge Harmon also suggested that appellant and counsel could communicate by whispering or asking for a break to discuss matters out loud if they did not want to whisper. Counsel reiterated that he wished to communicate with appellant in writing and suggested, as an alternative security measure, that appellant be secured in leg shackles instead of handcuffs and be seated several feet away from him, giving counsel time to react if appellant became aggressive. Judge Harmon refused these requests and ordered that appellant be handcuffed.

Counsel renewed his objections at the beginning of the punishment phase and requested that appellant be allowed to write with State-provided crayons, reasoning that they surely could not be considered deadly weapons, but Judge Harmon refused this accommodation as well. After the punishment phase concluded but before the jury was dismissed, Judge Harmon asked jurors if they had seen the handcuffs or noticed that the courtroom procedure of everyone rising when the jury entered changed during the trial. None of the jurors said they noticed the handcuffs or the change in standing procedure.

■ As the United States Supreme Court has noted, restraining a defendant in the courtroom implicates three fundamental legal principles. *See Deck v. Missouri*, 544 U.S. 622, 630, 125 S.Ct. 2007, 2013, 161 L.Ed.2d 953 (2005). First, our criminal process presumes the defendant is innocent until proven guilty, and visibly restraining the defendant infringes upon this presumption. *Id.* Second, a defendant has a constitutional right to counsel to help secure a meaningful defense, and physical restraints can interfere with the ability to communicate with counsel. *Id.* Third, the routine use of physical restraints can undermine the dignity of the judicial process. *Id.* Thus, as a general matter, a defendant has a right to be tried without the use of physical restraints. *See Culverhouse v. State*, 755 S.W.2d 856, 859 (Tex.Crim.App. 1988) ("Generally, a defendant has a right to be tried without being handcuffed."); *see also Cooks v. State*, 844 S.W.2d 697, 722 (Tex.Crim.App.1992) (noting that "[o]nly in rare circumstances is shackling called for").

■ However, the trial court has discretion to order restraints if there is a showing of a manifest need or exceptional circumstances, such as when a defendant poses a threat to himself or others. *See Long v. State*, 823 S.W.2d 259, 282 (Tex. Crim.App.1991); *Funari v. State*, 70 S.W.3d 175, 176 (Tex.App.-San Antonio 2001, pet. dism'd, untimely filed). Restraints cannot routinely be ordered based on general security concerns or the type of crime charged but must be assessed on a case-by-case basis. *See Deck*, 125 S.Ct. at 2011 ("[T]rial courts may not shackle defendants routinely, but only if there is a particular reason to do so."); *Long*, 823 S.W.2d at 283 (holding that neither the nature of the crime charged nor general concerns over courtroom security can justify restraints); *Simms v. State*, 127

S.W.3d 924, 927 (Tex.App.-Corpus Christi 2004, pets. ref'd) (explaining that "[t]he decision to use physical restraints must be made by the trial judge on a case-by-case basis" (internal quotation marks omitted)). Judge Harmon completely disregarded these principles. He explicitly acknowledged that appellant did not pose any additional security risk, but he nonetheless ordered that appellant be handcuffed pursuant to a new courtroom security policy. Such conduct is specifically prohibited both by the United States Supreme Court and the Court of Criminal Appeals. *See Deck,* 125 S.Ct. at 2011; *Long,* 823 S.W.2d at 283. While courtroom security is an increasingly pressing concern, routinely restraining defendants is not a permissible manner in which to address it. We conclude that Judge Harmon abused his discretion in ordering that appellant be handcuffed without finding a particular reason specific to appellant to do so. *See Long,* 823 S.W.2d at 283 (finding abuse of discretion in ordering restraints based on general security concerns and the nature of the crime as opposed to reasons specific to defendant); *Grayson v. State,* 192 S.W.3d 790, 792 (Tex.App.-Houston [1st Dist.] 2006, no pet. h.) ("We hold that by requiring appellant to be tried in shackles in the absence of any exceptional circumstances, the trial judge abused his discretion.").

 Appellant claims that we should reverse without a harm analysis because this error was structural. The Supreme Court has held that a structural error is a " 'defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself.' "

*Johnson v. United States,* 520 U.S. 461, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (quoting *Arizona v. Fulminante,* 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)). The Court of Criminal Appeals has explained that only federal constitutional errors can be structural and then only if the Supreme Court has labeled them so. *See Gray v. State,* 159 S.W.3d 95, 97 (Tex. Crim.App.2005). The Supreme Court has most recently defined structural errors as: the total deprivation of counsel at trial, the lack of an impartial trial judge, the unlawful exclusion of members of the defendant's race from a grand jury, the denial of the right to self-representation at trial, the denial of the right to a public trial, and an instruction that erroneously lowers the State's burden of proof below the "beyond a reasonable doubt" standard. *Johnson v. State,* 169 S.W.3d 223, 235 (Tex.Crim.App. 2005) (citing *Johnson,* 520 U.S. at 468–69, 117 S.Ct. 1544), *cert. denied,* —— U.S. ——, 126 S.Ct. 1355, 164 L.Ed.2d 66 (2006). Appellant argues that the interference with attorney-client communication permeated the trial, resulting in structural error. However, only an error resulting in the complete denial of counsel is structural; anything less requires a harm analysis. *See id.* at 229–30. Though we conclude that the handcuffs interfered with appellant's ability to communicate with his attorney, that does not amount to a total deprivation of counsel.[1] Thus, we hold that the trial court did not commit structural error and that a harm analysis is appropriate.

 Under Texas Rule of Appellate Procedure 44.2(a), a non-structural consti-

---

1. Additionally, the Texas Supreme Court held that the unjustified handcuffing of a parent in a termination proceeding was not structural error. *See In re K.R.,* 63 S.W.3d 796, 800 (Tex.2001). In reaching this conclusion, the court reviewed cases from the U.S. Supreme Court and the Court of Criminal Appeals and noted that "neither court has held that an error in shackling a criminal defendant requires a new trial even if the error did not, beyond a reasonable doubt, contribute to the defendant's conviction or punishment." *Id.* at 799.

tutional error must be reversed "unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." This rule follows the harmless error standard set forth by the Supreme Court in *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). *See Johnson,* 169 S.W.3d at 228; *Potier v. State,* 68 S.W.3d 657, 662 & n. 26 (Tex.Crim.App.2002). Under this standard, it is the State's burden, as beneficiary of the error, to prove the error is harmless beyond a reasonable doubt. *See Deck,* 125 S.Ct. at 2015–16 (quoting *Chapman,* 386 U.S. at 24, 87 S.Ct. 824); *Wall v. State,* 184 S.W.3d 730, 746 n. 53 (Tex.Crim.App.2006); *Williams v. State,* 958 S.W.2d 186, 194 n. 9 (Tex.Crim. App.1997). Unless the error could not possibly have contributed to the conviction or punishment, we must reverse. *See Wall,* 184 S.W.3d at 746; *Daniels v. State,* 25 S.W.3d 893, 899 (Tex.App.-Houston [14th Dist.] 2000, no pet.). Factors we consider in conducting this analysis include the source and nature of the error, the extent to which the State emphasized it, its probable collateral implications, the weight the jury would probably give it, and whether declaring it harmless would encourage its repetition with impunity. *See Harris v. State,* 790 S.W.2d 568, 587 (Tex. Crim.App.1989); *Daniels,* 25 S.W.3d at 899.

■ The State argues that the error was harmless because the jury did not see the handcuffs. The Supreme Court and Texas courts have repeatedly emphasized the harm visible restraints cause to a defendant's presumption of innocence. *See, e.g., Deck,* 125 S.Ct. at 2013; *Long,* 823 S.W.2d at 282; *Shaw v. State,* 846 S.W.2d 482, 486 (Tex.App.-Houston [14th Dist.] 1993, pet. ref'd). Consequently, Texas courts have consistently found that no harm results from restraining a defendant when the restraints were not visible.[2] *See, e.g., Canales v. State,* 98 S.W.3d 690, 697–98 (Tex.Crim.App.2003); *Long,* 823 S.W.2d at 283.

However, this case goes beyond what the jury did or did not see. As the Supreme Court recognized in *Deck,* physical restraints can interfere with the accused's ability to communicate with counsel. 125 S.Ct. at 2013; *see also Simms,* 127 S.W.3d at 927; *Brown v. State,* 877 S.W.2d 869, 871 (Tex.App.-San Antonio 1994, no pet.). The State argues that the record does not show appellant's communication with his attorney was actually undermined. We disagree. The record does show some interference with attorney-client communication. Counsel had instructed appellant to communicate with him in writing to avoid trial distraction and to avoid calling the jury's attention to their communication. Further, when Judge Harmon ordered that appellant be handcuffed, he also instructed the bailiff to remove from appellant's hand the pen his attorney had given him to write notes. Accordingly, appellant's communication with his attorney was in fact hindered.[3]

2. The State also argues that as long as the restraints are not visible to the jury, a trial court does not err in ordering their use, regardless of the circumstances. We reject this argument. Though many cases focus on the impact of the jury seeing a defendant restrained, none have held that a trial court has absolute authority to order restraints provided the jury does not see them. As we discuss below, the use of restraints, whether visible or not, can violate a defendant's constitutional rights.

3. Thus, this case is distinguishable from other cases in which the record showed no interference with attorney-client communication. *See, e.g., Brown,* 877 S.W.2d at 872 (noting record contained no indication that defendant's leg brace impeded communication with his attorney); *State v. Russ,* 709 N.W.2d 483, 487

■ The State stresses that Judge Harmon took specific steps to leave open other methods of communication, such as whispering or calling for breaks for discussions. Although these other methods were available, they were arguably less effective than the method appellant and his attorney preferred. A defendant has a general "right to unrestricted access to his lawyer for advice." *Perry v. Leeke,* 488 U.S. 272, 284, 109 S.Ct. 594, 102 L.Ed.2d 624 (1989); *see also Illinois v. Allen,* 397 U.S. 337, 344, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970) (explaining that "one of the defendant's primary advantages of being present at trial [is] his ability to communicate with his counsel"). This access may be limited for important reasons, such as to respond to a defendant's disruptive behavior or to address a security risk. *See Allen,* 397 U.S. at 343–44, 90 S.Ct. 1057; *see also Morgan v. Bennett,* 204 F.3d 360, 367 (2d Cir.2000) (citing *Perry* and other Supreme Court authority for the principle that "the court should not, absent an important need to protect a countervailing interest, restrict the defendant's ability to consult with his attorney"). However, no such reasons existed here. We are not convinced beyond a reasonable doubt that unjustifiably handcuffing appellant did not impact effective communication between appellant and his attorney and played no resulting role in his conviction or punishment.

■ In addition to interfering with a defendant's ability to communicate with his attorney, needlessly restraining a defendant can have significant collateral implications. As the United States Supreme Court and other courts have recognized, restraining a defendant offends the dignity and decorum of judicial proceedings. *See, e.g., Deck,* 125 S.Ct. at 2013 (explaining that the courtroom's formal dignity in-

cludes respectful treatment of defendants, which routine shackling undermines); *Brown,* 877 S.W.2d at 871 ("[P]hysical restraints are an affront to the court and its proceedings."). Restraints can also embarrass and distract a defendant, thereby undermining his ability to participate in his own defense. *See, e.g., Deck,* 125 S.Ct. at 2013 (noting that "shackles 'impos[e] physical burdens, pains, and restraints'" that "'ten[d] to confuse and embarrass'" a defendant, thereby tending "'materially to abridge and prejudicially affect his constitutional rights'" (alterations in original)) (quoting *People v. Harrington,* 42 Cal. 165, 168 (1871)); *United States v. Durham,* 287 F.3d 1297, 1304 (11th Cir.2002) ("Even if the physical restraints placed upon the defendant are not visible to the jury, they still may ... confuse the defendant, impair his ability to confer with counsel, and significantly affect the trial strategy he chooses to follow." (internal quotation marks omitted)); *Brown,* 877 S.W.2d at 871 ("Less overt, but just as harmful, is the interference that a physical restraint causes with a Defendant's thought processes, the use of his mental faculties, and his ability to communicate with counsel during trial.").

We are also troubled by the nature and source of this error. This error emanated directly from the trial court, which is significant to our analysis. *See Ex parte Werne,* 118 S.W.3d 833, 837 (Tex.App.-Texarkana 2003, no pet.) ("The source of the error was evidently the court itself. That alone is of substantial importance."); *see also Daniels,* 25 S.W.3d at 899 (noting that "the State, with the approval of the court, was the source of the error"). Judge Harmon ruled in the face of established law, which appellant's counsel called to his attention, specifically noting that

(Wis.Ct.App.2005) (holding that deaf defendant failed to show that handcuffs actually

interfered with his ability to communicate in sign language).

appellant posed no unique security risk to justify restraints. *See Garcia v. State*, 919 S.W.2d 370, 381 (Tex.Crim.App.1996) (finding error harmful based in part on risk of repetition, noting that prosecutor offered and trial judge admitted evidence despite knowledge by both of deficiencies); *cf. Werne*, 118 S.W.3d at 837–38 (finding no harm, despite risk of repetition, when nothing indicated trial judge intentionally chose to ignore the law). Texas law has held for at least eighty years that restraining a defendant under these circumstances is unconstitutional. *See Gray v. State*, 99 Tex.Crim. 305, 320–22, 268 S.W. 941, 949–50 (1924). Further, Judge Harmon appears to have ordered restraints without a defendant-specific justification in at least three other cases. *See Grayson*, 192 S.W.3d at 792. We fear that declaring this error harmless may encourage repetition of this blatantly unconstitutional action. *See Kelly v. State*, 903 S.W.2d 809, 812 (Tex.App.-Dallas 1995, pet. ref'd) (finding harm based solely on need to prevent repetition of error that was committed at least two other times in past year); *see also Garcia*, 919 S.W.2d at 381 (finding error harmful based in part on fear of encouraging repetition); *Daniels*, 25 S.W.3d at 899–900 (same).

Because we are not convinced beyond a reasonable doubt that the handcuffs and the resulting limitations on communication between appellant and his attorney did not contribute to appellant's conviction or punishment, we find the error harmful in this case. We sustain appellant's first three

issues and reverse and remand this case for a new trial.

## LEGAL SUFFICIENCY

 In appellant's seventh issue, he complains that the evidence is legally insufficient to support a conviction for aggravated robbery under the law of parties. We address this claim even though we have sustained appellant's first three issues and ordered a new trial. *See Rankin v. State*, 46 S.W.3d 899, 901 (Tex.Crim. App.2001) (noting that " '[a]n appellate court must always address challenges to the [legal] sufficiency of the evidence' " (quoting *McFarland v. State*, 930 S.W.2d 99, 100 (Tex.Crim.App.1996) (alterations in original)).[4] In conducting a legal-sufficiency review of a jury's finding of guilt, we view the evidence in the light most favorable to the verdict. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex.Crim.App.2000). We do not ask whether we believe the evidence at trial established guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Rather, we determine only whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Cardenas v. State*, 30 S.W.3d 384, 389 (Tex.Crim. App.2000). In our review, we accord great deference " 'to the responsibility of the trier of fact [fairly to] resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.' " *Clewis v. State*, 922 S.W.2d 126, 133 (Tex.Crim.App.1996) (quoting *Jackson*, 443 U.S. at 319, 99 S.Ct.

4. We need not address appellant's fifth issue challenging the legal sufficiency of the evidence to support his conviction as a principal because we conclude the evidence is legally sufficient to support his guilt as a party. *See Rabbani v. State*, 847 S.W.2d 555, 558 (Tex. Crim.App.1992) ("The principle is well-established that when the jury returns a general verdict and the evidence is sufficient to sup-

port a guilty finding under any of the allegations submitted, the verdict will be upheld."). We also need not consider appellant's remaining issues because, unlike his legal sufficiency challenge, success on these issues would not entitle appellant to acquittal instead of remand, and thus resolving them is not "necessary to final disposition of the appeal." *See* Tex.R.App. P. 47.1.

2781). We presume that any conflicting inferences from the evidence were resolved by the jury in favor of the prosecution, and we defer to that resolution. *Id.* at 133 n. 13.

 The Texas Penal Code provides that a defendant can be criminally responsible for the conduct of another— that is, a party to the offense—if the person acts with intent to promote or assist in the commission of the offense and solicits, encourages, directs, aids, or attempts to aid the other person committing the offense. TEX. PENAL CODE ANN. § 7.02(a)(2) (Vernon 2003). "Evidence is sufficient to convict under the law of parties where the defendant is physically present at the commission of the offense and encourages its commission by words or other agreement." *Ransom v. State,* 920 S.W.2d 288, 302 (Tex.Crim.App.1996). Though mere presence does not automatically make one a party to a crime, it is a circumstance tending to prove party status and, when considered with other facts, may be sufficient to prove that the defendant was a participant. *See Avila v. State,* 15 S.W.3d 568, 575 (Tex.App.-Houston [14th Dist.] 2000, no pet.); *Diaz v. State,* 902 S.W.2d 149, 152 (Tex.App.-Houston [1st Dist.] 1995, no pet.). Circumstantial evidence alone may be sufficient to show the defendant was a party. *King v. State,* 17 S.W.3d 7, 15 (Tex. App.-Houston [14th Dist.] 2000, pet. ref'd). In determining whether the defendant participated as a party, we review the events occurring before, during, and after the offense. *Id.* "Moreover, the cumulative force of all the incriminating circumstances may be sufficient to warrant a finding of guilt." *Id.*

In his videotaped police statement, which the jury viewed, appellant claimed he ran into Williams shortly before the robbery. According to appellant, he asked Williams for payment of eighty dollars he previously loaned to Williams, but Williams said he did not have the money. As they walked down the street, appellant continued to demand payment from Williams. They approached a grocery store parking lot and saw a woman by a van with its door open. Williams pointed out the woman and van to appellant, who in turn continued demanding repayment. Williams then told appellant that he was going "to take care of some business," which appellant said he understood meant Williams intended to rob someone to obtain repayment money. Williams asked to borrow the knife appellant always carried, and appellant complied. Williams then robbed Rubio, and he and appellant left together in the stolen van.

Appellant argues that he was merely present during the commission of the robbery. Despite his admission that he gave Williams the knife, he nevertheless claims he did not know that Williams had the knife on his person and intended to use it to commit an aggravated robbery. However, viewing the evidence in the light most favorable to the verdict, the jury could have determined that, after repeatedly hassling Williams to repay his debt, appellant and Williams came upon Rubio and her van in an empty parking lot, appellant gave Williams his knife to "take care of some business," which he knew meant robbing someone to repay him, and left with Williams in the stolen van. From these facts, the jury could have reasonably concluded that appellant intentionally assisted in the commission of the robbery. Thus, we conclude the evidence is legally sufficient to convict appellant as a party to the offense, and we overrule appellant's seventh issue.

## CONCLUSION

We find that the trial court committed constitutional error by requiring that ap-

pellant be handcuffed during the trial. We also find that the State has not proven this error was harmless beyond a reasonable doubt. Thus, we reverse the trial court's judgment and remand for a new trial.

HEDGES, C.J. concurs.

ADELE HEDGES, Chief Justice, concurring.

I agree with the majority that the trial court abused its discretion by requiring appellant to wear handcuffs without finding a reason specific to appellant and that this constituted harmful error. However, I respectfully disagree with the majority's legal sufficiency analysis. Instead of finding the evidence to be legally sufficient under the law of parties, I would find the evidence to be legally sufficient to support appellant's conviction as a principal. Rubio testified that she saw only one perpetrator and she identified appellant at trial. Appellant admitted that he was present during the robbery and that he owned the knife. He also was seen driving the complainant's van. Viewing the evidence in the light most favorable to the verdict, I believe that the jury could have found beyond a reasonable doubt that appellant committed the offense as a principal.

Examining the sufficiency of the evidence with regard to appellant's conviction as a party takes into account appellant's own self-serving testimony, intended as exonerating, and contorts it into incriminating evidence. This analysis seems to me to violate the spirit, if not the letter, of the legal sufficiency standard of review. Therefore, I respectfully concur.