**Ralph BOONE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–06–00352–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

July 31, 2007.

Janet Seymour Morrow, Spring, for appellant.

Carmen Castillo Mitchell, Houston, for appellee.

Panel consists of Chief Justice HEDGES and Justices HUDSON and GUZMAN.

## OPINION

EVA M. GUZMAN, Justice.

Appellant Ralph Boone challenges his conviction for possession of cocaine on the grounds that the trial court erred in (1) overruling his *Batson* challenge and (2) ordering him restrained in handcuffs for

the duration of the trial. Because we conclude the trial court committed harmful error by ordering appellant handcuffed during the proceedings, we reverse and remand for a new trial.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On the afternoon of October 20, 2004, appellant was driving a maroon Buick in a Houston neighborhood notorious to police for narcotics complaints. He was stopped by Officer Jason Turrentine of the Houston Police Department because he and his female passenger were not wearing seatbelts.[1] While approaching the vehicle after it pulled over, Turrentine saw appellant moving around as if he were trying to hide something. Because appellant was unable to provide identification and seemed very nervous when Turrentine questioned him, Turrentine asked appellant to step out of the vehicle. When appellant stepped out, Turrentine noticed a clear plastic bag containing several beige rocks on the driver's seat where appellant had been sitting. Turrentine's field test indicated that the rocks contained cocaine. Officer Turrentine arrested appellant and had the car towed to a nearby parking lot. Pursuant to an inventory search, Turrentine discovered several items in the front area of the car, including appellant's cable bill, a bottle of codeine prescribed to appellant, a bottle of codeine prescribed to another individual, and a soda bottle containing a red liquid that later testing revealed to be codeine. Turrentine also found a large black bag containing scales, walkie-talkies, and binoculars in the trunk of the car.

Appellant was charged by complaint with possession of a controlled substance. At trial, Turrentine identified appellant and described the offense. A police chemist confirmed that the rocks found in the vehicle contained cocaine. Appellant did not testify, and the jury found appellant guilty as charged. Appellant entered a plea of true to two enhancement paragraphs, and the trial court sentenced him to twenty-five years' confinement in the Texas Department of Corrections, Institutional Division. This appeal timely followed.

## II. ISSUES PRESENTED

Appellant presents five issues for our review. In his first four issues, appellant contends that the trial court erred in overruling his challenge to the racial make-up of the jury. In his fifth issue, appellant asserts that the trial court violated his due process rights by having him handcuffed during trial without adequate reason. Because appellant's fifth issue is dispositive of his appeal, we address it first and do not reach his other complaints. *See* TEX. R.APP. P. 47.1.

## III. DISCUSSION

### A. HANDCUFFING APPELLANT DURING PROCEEDINGS

■ Prior to voir dire and outside the presence of the jury panel, appellant's counsel objected to appellant being handcuffed during the proceedings. After a fairly lengthy discourse,[2] the trial judge, Hon. William Harmon, overruled the ob-

---

1. Turrentine also ran the vehicle's license plates and discovered several outstanding warrants for the owner's arrest. However, the owner was another female who was not

the passenger in the vehicle or otherwise involved in this offense.

2. The discussion between the trial court, appellant's trial counsel, appellant, and the

jection, stating that he was concerned that the cane appellant needed to walk could be used as a deadly weapon. This concern, coupled with appellant's previous convictions and the length of incarceration he was facing in this case, led Judge Harmon to order appellant shackled in handcuffs for the duration of his trial.

■■■ The United States Supreme Court has recognized that a criminal defendant has the right to be tried without the use of restraints. *Deck v. Missouri,* 544 U.S. 622, 630–31, 125 S.Ct. 2007, 2013, 161 L.Ed.2d 953 (2005). The Supreme Court noted that restraining a defendant implicates three fundamental legal principles. *Id.* First, our criminal process presumes the defendant is innocent until proven guilty, and visibly restraining the

State was as follows:

> [Trial Counsel]: Judge, first, I'd like to object on the record under *Deck v. Missouri* to the defendant being shackled during this trial.
>
> [Judge Harmon]: He's not shackled. He's got handcuffs.
>
> [Trial Counsel]: He's got handcuffs. Apparently the Court ordered him shackled, but because of his physical condition, they're unable to put leg irons on him. . . .
>
> &ast; &ast; &ast;
>
> [Trial Counsel]: He's a 54–year–old man. He's got a criminal history, but none of his criminal history involves any violent or assaultive offenses. All of his arrests are for drugs, drugs, [sic] burglary and theft. He's got no convictions for drugs. He has got convictions for theft and burglary. And based on that, we would object to him being handcuffed during this trial.
>
> [Judge Harmon]: All right. Well, you've got a cane with you right now, right, Mr. Boone?
>
> [Appellant]: Yes, sir.
>
> &ast; &ast; &ast;
>
> [Prosecutor]: The State intends to offer— make a proffer of evidence, hopefully, when we break for voir dire. I believe the defendant—there are some indicators in the Harris County JIMS system, indications that

defendant infringes upon this presumption. *Id.* Second, a defendant has a constitutional right to counsel to help secure a meaningful defense, and physical restraints can interfere with the ability to communicate with counsel. *Id.* Third, the routine use of physical restraints can undermine the dignity of the judicial process. *Id.* Thus, as a general matter, a defendant has a right to be tried without the use of physical restraints. *Davis v. State* 195 S.W.3d 311, 315 (Tex.App.-Houston [14th Dist.] 2006, no pet.)(quoting *Culverhouse v. State,* 755 S.W.2d 856, 859 (Tex.Crim.App.1988)). Shackling should only be used as a last resort. *Molina v. State,* 971 S.W.2d 676, 679 (Tex.App.-Houston [14th Dist.] 1998, pet. ref'd).

■■■ The trial court does, however, have discretion to order restraints when

> the defendant has had some incidents at the Harris County Jail. I need to get a list of those incidents and basically a key to translate what those incidents refer to. I like to put on the record those incidents that have been documented regarding the defendant over at the Harris County Jail to prove that he could possibly be a danger here in the courtroom today.
>
> [Judge Harmon]: Oh, okay. Because evidently the defendant needs a cane to assist him walking, and because the Court's concern that the cane could be used as a deadly weapon and because of the defendant's numerous prior convictions and the fact that he's looking at 25 years to life in prison if he gets convicted, the Court is going to allow him to continue to keep his cane, but because of the Court's concern about the cane, I'm going to order him to be handcuffed during trial.
>
> He will be positioned in a way where it will be absolutely impossible for the jury to observe the handcuffs. As a matter of fact, these are new handcuffs. These are black. These are not traditional silver handcuffs. Barely even noticeable to me. And, so, Mr. Boone, just keep your hands below the table so the jury cannot see the cuffs. Put your sleeves over them.

there is a showing of a manifest need or exceptional circumstances, such as when a defendant poses a threat to himself or others. *Davis,* 195 S.W.3d at 315. When reviewing this issue on appeal, we must determine whether the trial court abused its discretion and, to assist in this determination, the record must clearly and affirmatively reflect the reason for the restraint. *Long v. State,* 823 S.W.2d 259, 282 (Tex.Crim.App.1991) (en banc). The crime charged or a general concern for courtroom security are not sufficiently specific reasons to require restraint. *See id.* At 283. Exceptional circumstances warranting the use of restraints have included situations in which an accused has expressed an intent to escape, made threats of physical violence, resisted being brought into court, repeatedly interrupted court proceedings, attempted to leave the courtroom, assaulted persons in court, behaved in an unruly manner in court, or engaged in or threatened non-conforming conduct. *Gammage v. State,* 630 S.W.2d 309, 313–14 (Tex.App.-San Antonio 1982, pet. ref'd) (citations omitted).

■ In this case, Judge Harmon determined that because appellant was facing at least twenty-five years in prison if convicted and his cane could potentially be used as a deadly weapon, appellant posed a threat. But nothing in our record reflects any manifest need or exceptional circumstances warranting the use of restraints. At the time of his trial, appellant was a fifty-four year old man with no history of any violent or assaultive offenses.[3] Nothing in our record indicates appellant had

expressed any intent to escape, exhibited any threatening or violent behavior, or disrupted the courtroom proceedings. *See id.* Although Judge Harmon offered a purportedly defendant-specific justification in this case, *i.e.,* that he was "concerned that the cane could be used as a deadly weapon," this statement amounts to no more than speculation that a person could conceivably use the cane in a dangerous manner. It does not justify Judge Harmon's order that appellant remain handcuffed throughout the trial. First, "threats or acts warranting restraint during trial must be real and not merely speculative...." *Molina,* 971 S.W.2d at 680; *Gammage,* 630 S.W.2d at 314. Here, appellant expressed no threat by word or deed. And tellingly, Judge Harmon allowed appellant to keep the cane, even though appellant suggested that "the cane can be put back." We conclude Judge Harmon abused his discretion in ordering that appellant be handcuffed for the duration of trial. *See Wiseman v. State,* 223 S.W.3d 45, 50–51 (Tex. App.-Houston [1st Dist.] 2006, pet. ref'd); *Davis,* 195 S.W.3d at 316; *Grayson v. State,* 192 S.W.3d 790, 792 (Tex.App.-Houston [1st Dist.] 2006, no pet.); *Ramirez v. State,* No. 14–05–00435–CR, 2006 WL 2345952, at *3 (Tex.App.-Houston [14th Dist.] Aug. 15, 2006, no pet.) (mem. op.) (not designated for publication).

■ Because this error implicates appellant's constitutional rights, we must reverse the judgment unless we determine beyond a reasonable doubt that the error did not contribute to the conviction. Tex. R.App. P. 44.2(a); *Davis,* 195 S.W.3d at

---

**3.** According to the State, Harris County Jail records indicate appellant was charged with several counts of misconduct while in jail: misuse of medication; possession of contraband; manufacturing, possession of an intoxicant or intoxication; possession of unau-

thorized clothing, bedding, or towels; and gambling or possessing of gambling paraphernalia. None of these incidents involve any violence, threats of violence, or escape attempts.

316–17. "Factors we consider in conducting this [harm] analysis include the source and nature of the error, the extent to which the State emphasized it, its probable collateral implications, the weight the jury would probably give it, and whether declaring it harmless would encourage its repetition with impunity." *Davis*, 195 S.W.3d at 317. As beneficiary of the error, the burden falls on the State to prove that the error was harmless beyond a reasonable doubt. *Id.*

In support of its argument that Judge Harmon's error was harmless, the State asserts first that the record does not reflect any jurors ever saw the handcuffs. But the prosecutor himself, during the colloquy in response to appellant's initial objection to the handcuffs, stated that the armband of the handcuffs was "clearly visible." Later, during voir dire but outside the venire panel's presence, appellant's counsel reiterated his concern that veniremembers could see appellant's handcuffs, stating, "The problem with having him cuffed, because we have jurors milling all over the place, walking up here. They're

walking by him, they can see it. . . . " Finally, after the State's first witness testified, appellant's counsel renewed his objection:

> Every time [appellant] stands up for the jury when they enter or walk out of the room, anybody that cares to look at him can see his handcuffs. They are obviously visible to this jury and I don't know if they've seen them or not, but again, I object to him being shackled and would ask again that they be removed immediately.

Based on this record, we cannot say that jurors did not see the handcuffs.[4]

The State next argues that appellant has not shown that being handcuffed during trial affected his ability to communicate with counsel or affected his mental faculties. But appellant's counsel based his objection to appellant being handcuffed in part because the restraints prevented appellant from fully participating in his defense.[5] Although nothing in our record reflects that writing was the preferred method of communication between appellant and his trial counsel, a defendant has

---

4. Moreover, we have previously determined that the inquiry into this issue "goes beyond what the jury did or did not see." *Davis*, 195 S.W.3d at 317.

5. The record reflects that counsel clarified his initial objection as follows:

> [Trial Counsel]: Before we bring the jury in, I'm also objecting, so the record is clear, on the basis of the—of the dignity of the court procedure, court process to handcuff someone while they're undergoing trial. It's unconstitutional, violates the right to due process and a fair trial in that he is not able to be a full participant in the trial without a jury possibly seeing his handcuffs. When he has to stand up when the jury comes in and out of the room, they can see his handcuffs. When you seat the jury after we finish voir dire, when they walk up here, they can potentially see his handcuffs, and it doesn't allow him to fully participate

in the trial and assist in his defense with dignity that he should be entitled to during his trial. We object for that reason as well.

> [Judge Harmon]: It is impossible for anybody to see—as he appears right now, for anybody to know he's handcuffed.

> [Trial Counsel]: Judge, my objection, though is it's not necessarily only if the jury can possible see it.

> [Judge Harmon]: That possibility does not exist.

> [Trial Counsel]: Well, I think it exists, but even if it didn't, I still object on the basis that he has a right to be tried in dignity, and shackling him does not allow him to participate in that way.

> [Judge Harmon]: He's got on street clothes, he's got a cane. He's being tried in a dignified manner.

> The objection is overruled.

a general "right to unrestricted access to his lawyer for advice." *Davis,* 195 S.W.3d at 318 (quoting *Perry v. Leeke,* 488 U.S. 272, 284, 109 S.Ct. 594, 602, 102 L.Ed.2d 624 (1989)). We are therefore unconvinced that handcuffing appellant had no impact effective communication between appellant and his attorney.

Finally, the State asserts that the evidence of appellant's guilt was overwhelming in this case. We disagree. Although Officer Turrentine's testimony established several links between appellant and the drugs, we note that appellant did not own the vehicle in which the drugs were found. Additionally, appellant was not the only person in the vehicle when Turrentine discovered the drugs; a female passenger was sitting next to appellant in the vehicle when Turrentine initiated the traffic stop. Under these circumstances, we cannot say that the handcuffs did not contribute to the jury's determination of appellant's guilt.

In sum, we cannot say, beyond a reasonable doubt, that the trial court's abuse of discretion in handcuffing appellant did not contribute to appellant's conviction. We therefore sustain appellant's fifth issue.

## IV. CONCLUSION

Because we sustain appellant's fifth issue, we do not consider his *Batson* issues. We reverse and remand this case for a new trial.