**Raul Enrique YGLESIAS, Appellant**

v.

**The STATE of Texas, Appellee.**

**No. 14–06–00144–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

April 24, 2008.

---

Hattie Sewell Shannon, Houston, for State.

Carol M. Cameron, Houston, for appellees.

Panel consists of Chief Justice HEDGES, and Justices FROST and MURPHY.*

## MAJORITY OPINION

KEM THOMPSON FROST, Justice.

Appellant Raul Enrique Yglesias appeals his conviction for manslaughter, complaining that the trial court erred (1) in requiring him to wear leg shackles during the guilt-innocence phase, and (2) in entering an affirmative finding that a deadly weapon had been used during the offense. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Complainant, L.J., was a twenty-month-old baby, whose mother left her in Gloria Fowler's long-term care in 2001. In January 2003, Fowler's sister, Michelle Martinez, and appellant Raul Enrique Yglesias began caring for L.J. On April 28, 2003, L.J. was left alone in appellant's care. Appellant reported to Martinez that L.J. had fallen and hit her head and that L.J. had become unresponsive and had stopped moving. Martinez contacted Fowler to check on L.J. The toddler was having a seizure when Fowler found her and called 9–1–1.

Paramedics responded to the 9–1–1 call and transported L.J. to a children's hospital. She was treated by several physicians for brain swelling and retinal hemorrhages. A pediatrician observed old and new bruises on L.J.'s body. L.J. was pronounced dead on April 29, 2003. Each of the doctors who treated or examined L.J. testified at trial.

Autopsy reports revealed that L.J. suffered from blunt head trauma, a neck injury, and multiple contusions on her body. According to a medical examiner, L.J.'s neck injury stemmed from a direct impact and the injury to her head was caused by multiple impacts. The medical examiner determined that the contusions were consistent with being caused by a cane or stick and that the resulting injuries all occurred at the same time, shortly before the child was admitted to the hospital. The injuries, according to the medical examiner, could not have been caused by a fall.

Appellant was indicted for the felony offense of capital murder, to which he pleaded "not guilty." At the trial that followed, the trial court ordered appellant to be restrained by leg shackles. At the beginning of the guilt-innocence phase, appellant's trial attorney objected to appellant's wearing leg shackles during the trial. Defense counsel gave three reasons for his objection: (1) appellant did not wear shackles the previous day during voir dire; (2) appellant had not threatened harm or escape; and (3) appellant allegedly was

---

* Senior Chief Justice Paul C. Murphy sitting by assignment.

medically unable to commit violence because of his diabetic condition. Appellant's trial counsel contended that appellant's restraint by leg shackles "destroys the constitutional presumption of innocence." The trial court overruled appellant's objection on the stated basis that it would not be possible for the jury to see the shackles. When defense counsel argued that he was not assured the shackles would not be visible to the jury during breaks in the trial, the trial judge stated that he would "absolutely ensure the jury will not see he's shackled." At no time thereafter did appellant complain or even suggest that the jury could see the shackles or that the jury was otherwise aware that appellant was shackled.

At the end of the guilt-innocence phase, the trial judge read the jury charge out-loud from a computer screen and, in an admitted oversight, failed to read out-loud to the jury the special issue requiring a finding of use of a deadly weapon in committing the lesser-included offense of manslaughter. However, the jury received the special issue in written form before deliberations began. The jury found appellant guilty of the lesser-included offense of manslaughter, but failed to affirmatively answer the special issue regarding use of a deadly weapon.

At the punishment phase of trial, appellant elected to have the trial court assess punishment. The trial court, based on the jury's "guilty" verdict for manslaughter, entered an affirmative finding for the record reflecting that a deadly weapon had been used in the commission of the offense. Appellant's counsel objected to the court's finding on the basis that the jury did not affirmatively answer the question involving the special issue, essentially arguing that no affirmative finding existed. The trial court stated for the record that the special issue in the charge would have been read out-loud to the jury absent the oversight and that the jury nonetheless received the special issue in written form along with the jury charge. The trial court noted that "a special issue charge was not necessary to submit to the jury in order to find the defendant guilty of one of the lesser offenses." In sentencing appellant to twelve years' confinement, the trial court ordered, over appellant's objection, that the judgment reflect the affirmative finding that a deadly weapon was used in commission of the offense of manslaughter.

## II. ISSUES AND ANALYSIS

**A. Did the trial court reversibly err in requiring appellant to wear leg shackles during trial?**

In his first issue, appellant alleges error by the trial court in requiring him to wear leg shackles at trial in that the restraints were unwarranted. At trial, appellant argued that being forced to wear leg shackles "destroys the constitutional presumption of innocence."

We begin by considering whether the trial court erred in requiring appellant to wear leg shackles during trial when he was not required to wear them in voir dire, had not threatened harm or escape, and was allegedly medically unable to commit violence because of his diabetic condition.

In *Deck v. Missouri*, the United States Supreme Court addressed a defendant's right under the United States Constitution to be free from physical restraints visible to the jury, except in certain circumstances. *See* 544 U.S. 622, 630, 125 S.Ct. 2007, 2013, 161 L.Ed.2d 953 (2005). Even though the *Deck* court did not address physical restraints that are not visible to the jury, this court has applied the *Deck* analysis to cases involving shackles that it presumed were not visible to the jury. *See Davis v. State*, 195 S.W.3d 311, 315–17 (Tex.App.-Houston [14th Dist.]

2006, no pet.). Generally, a defendant has a right to be tried without being shackled, whether or not the shackles are visible to the jury. *See id.* However, the trial court has discretion to order restraints if there is a showing of a manifest need or exceptional circumstances, such as when a defendant poses a threat to himself or others. *See id.* at 315. Restraints cannot routinely be ordered based on general security concerns or the type of crime charged; rather, the need for restraints must be assessed on a case-by-case basis. *See id.* A trial court abuses its discretion in requiring a defendant to be shackled during the guilt-innocence phase if it does so without first finding a particular reason for shackling that is specific to the defendant. *See id.* at 316.

The trial court did not make specific findings of fact or indicate exceptional circumstances or a manifest need for restraining appellant by leg shackles. Our record does not reflect sufficient reasons for the trial court's decision to keep the defendant in shackles during trial. For this reason, we conclude the trial court abused its discretion in ordering appellant to be shackled during trial. *See Long v. State,* 823 S.W.2d 259, 283 (Tex.Crim.App. 1991) (concluding trial court abused its discretion in ordering restraints when trial court's concerns were general security concerns rather than specific to the defendant); *Davis,* 195 S.W.3d at 315–17 (concluding trial court abused its discretion in ordering the defendant to be shackled because there was no showing of exceptional circumstances or a manifest need to shackle the defendant). Having found error, we now must consider whether this error warrants reversal.

■ Even though the trial court's decision to shackle appellant's legs during trial constituted error, this error is subject to a constitutional harm analysis. Tex. R. App. P. 44.2(a); *Davis,* 195 S.W.3d at 316–17. Therefore, we must reverse the judgment unless we determine beyond a reasonable doubt that the error in keeping the defendant in shackles did not contribute to the conviction or punishment. *See* Tex. R. App. P. 44.2(a); *Davis,* 195 S.W.3d at 316–17. In assessing harm we consider: (1) the source and nature of the error, (2) the extent to which the State emphasized the error, (3) its probable collateral implications, (4) the weight the jury might have given the error, and (5) whether declaring it harmless would encourage repetition with impunity. *Davis,* 195 S.W.3d at 317. However, a trial court's error in ordering a defendant to be shackled is harmless if the shackles are not visible to the jury and if they do not unduly restrict a defendant's ability to communicate with counsel.[1] *See Canales v. State,* 98 S.W.3d 690, 697–98 (Tex.Crim.App.2003); *Davis,* 195 S.W.3d at 317–18.

The record in this case reflects that the leg shackles were not visible to the jury. When appellant's trial counsel expressed concern over the use of the shackles, the

---

1. Our dissenting colleague, in assessing harm in this case, specifically focuses on the probable collateral implications, the source and nature of the error, and whether the error would be repeated with impunity if the error is not declared harmful. *See* 252 S.W.3d at 780. In cases in which these factors were considered, the defendants' restraints either were visible or impaired communication with trial counsel. *Boone v. State,* 230 S.W.3d 907, 913 (Tex.App.-Houston [14th Dist.] 2007, no pet.); *Davis,* 195 S.W.3d at 317. Though our dissenting colleague correctly notes that an accused may suffer harm even when the jury is unaware of the shackles, the case under review does not fall into either of these categories because appellant has not alleged impairment of his ability to communicate with his trial counsel, nor does the record show any impairment as the court in *Davis* determined was sufficient to warrant reversal. *See Davis,* 195 S.W.3d at 317.

trial court noted that it would be impossible for the jurors to see the shackles, a statement that was not contradicted either at the time of the objection or at any other time over the course of the trial. *See Grayson v. State*, 192 S.W.3d 790, 792 (Tex.App.-Houston [1st Dist.] 2006, no pet.). The trial court gave assurance that the jury would not be able to see the shackles during trial or during breaks. Appellant's trial counsel likewise indicated that jurors would not be able to see the shackles. Nothing in the record reflects that any member of the jury actually noticed that appellant was shackled. The record shows beyond a reasonable doubt that the shackles worn by appellant were not visible to the jury. Therefore, cases in which the record showed that the shackles were visible to the jury are not on point.[2]

In addition, appellant has not asserted that his communication with counsel was in any way hampered as a result of the leg shackles. The record shows beyond a reasonable doubt that the shackles did not unduly interfere with appellant's ability to communicate with his trial counsel. Therefore, cases in which the record showed that the shackles unduly interfered with appellant's ability to communicate with his trial counsel likewise are not on point.[3]

Unnecessary restraint of a defendant during trial is repugnant to the dignity of judicial proceedings and a practice that is abhorrent to our constitution. *See Davis*, 195 S.W.3d at 315–17. However, in a harm analysis, the question is whether there is a reasonable possibility that the error might have contributed to the conviction, and without evidence that the shackles were visible to the jury or that the shackles unduly restricted appellant's ability to communicate with trial counsel, binding precedent compels the conclusion that the trial court's error is harmless. *See Canales*, 98 S.W.3d at 698; (concluding that ordering defendant to wear shackles was harmless); *Grayson*, 192 S.W.3d at 792–93 (same as *Canales); see also Ramirez v. State*, No. 14–05–00435–CR, 2006 WL 2345952, at *3 (Tex.App.-Houston [14th Dist.] Aug. 15, 2006, no pet.) (mem. op.) (not designated for publication) (same as *Canales* ). In the absence of harm, the trial court's error is not reversible. Accordingly, we overrule appellant's first issue.

## B. Did the trial court err in entering an affirmative finding that a deadly weapon had been used in the commission of the offense?

■ In his second issue, appellant contends the trial court erred in entering an affirmative finding that a deadly weapon had been used in the commission of the offense, even though the jury did not answer the special issue.

■ When the jury is the trier of fact, the trial court properly may enter an affirmative finding on the use of a deadly weapon when the indictment alleges the use of a deadly weapon, the weapon is deadly per se, or the jury affirmatively answers a special issue on the use of a deadly weapon. *See Polk v. State*, 693 S.W.2d 391, 394, 396 (Tex.Crim.App.1985); *Adams v. State*, 40 S.W.3d 142, 146 (Tex.

---

**2.** *See, e.g., Boone,* 230 S.W.3d at 913 (concluding trial court reversibly erred in ordering defendant to wear handcuffs during trial because record showed that handcuffs were visible to the jury).

**3.** *See, e.g., Davis,* 195 S.W.3d at 317–18 (concluding trial court reversibly erred in order-

ing defendant to wear handcuffs during trial because record showed that trial court's order impaired defendant's ability to communicate with trial counsel by preventing him from writing notes to his counsel and because trial court ordered a pen removed from defendant's hand, which he had been using to communicate in writing with trial counsel).

App.-Houston [14th Dist.] 2000, pet. ref'd). When, as in this case, the judge is the trier of fact at the punishment stage of the trial, the judge has the authority to make an affirmative finding if the facts show, and the judge believes, that the defendant, himself, used or exhibited a deadly weapon, even if the jury has not answered a special issue. *See Flores v. State,* 690 S.W.2d 281, 283 (Tex.Crim.App.1985). Even if the State did not reoffer the evidence adduced at the guilt-innocence phase, as long as the judge assessing punishment is the same judge who presided at trial, the trial court may enter the affirmative finding on the use of a deadly weapon during the punishment phase. *See Tamminen v. State,* 653 S.W.2d 799, 802 (Tex. Crim.App.1983); *Wright v. State,* 468 S.W.2d 422, 425 (Tex.Crim.App.1971).[4]

Testimony during the guilt-innocence phase showed that L.J. was left with appellant in his sole care. Autopsy evidence and the medical examiner's testimony reflect that L.J.'s injuries were not caused by a fall, but rather were the result of multiple or direct impacts caused shortly before L.J. was admitted to the hospital. One treating physician testified that L.J.'s retinal hemorrhaging was not consistent with a fall, but more consistent with serious bodily injury being inflicted upon the child. A pediatrician testified that L.J.'s injuries and resulting death stemmed from abuse. The jury convicted appellant on a jury charge which reflected the lesser-included offense of manslaughter that specifically required a finding of the use of a deadly weapon, either by appellant's hand or by an unknown object. At the punishment phase, the trial judge, who presided throughout the guilt-innocence phase, found that "as manslaughter was present-ed to the jury [ ] the verdict requires an affirmative finding that a deadly weapon was used during the commission of the offense" and entered the finding on a judgment form. Because the facts warranted this affirmative finding and the same judge presided throughout the guilt-innocence phase, it was within the trial judge's authority to enter such a finding. *See Flores,* 690 S.W.2d at 283; *Tamminen,* 653 S.W.2d 799, 802.

■■■ Appellant argues that if a trial court were to consider whether a deadly weapon was used, the deadly weapon must qualify as a deadly weapon per se, and that neither his hand nor an unknown object constitutes a deadly weapon per se. However, appellant has failed to adequately present this point for consideration. To present an issue for appellate review "the brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(h). Appellant has not presented a single argument or citation in support of this issue. In his appellate brief, appellant has not addressed any of the governing legal principles or applied them to the facts of this case. *See King v. State,* 17 S.W.3d 7, 23 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd). Appellant's brief contains a sentence that says "a deadly weapon, if any, in this case must be a deadly weapon per se, of which his hands or an unknown object do not qualify." Such conclusory statements, unsupported by authority, present nothing for appellate review. *Id.; see also Vuong v. State,* 830 S.W.2d 929, 940 (Tex. Crim.App.1992). We overrule appellant's second issue.

---

4. When the jury is instructed on the law of the parties, the affirmative finding must show that the appellant used or exhibited the deadly weapon or that appellant knew that a deadly weapon would be used or exhibited. *See* TEX. CODE. CRIM. PROC. ANN. art 42.12 § 3g(a)(2) (Vernon Supp.2008); *Flores,* 690 S.W.2d at 283.

Having overruled all of appellant's issues, we affirm the trial court's judgment.

HEDGES, C.J., dissents.

## DISSENTING OPINION

ADELE HEDGES, Chief Justice.

The majority concludes that although Judge Harmon abused his discretion, appellant suffered no harm. Because I believe Judge Harmon's shackling appellant caused harm, I respectfully dissent.

I begin with a brief history of Judge Harmon's routine policy of shackling defendants. Judge Harmon apparently learned through the news media that an inmate in San Francisco stabbed his counsel with a sharpened toothbrush, and in response, announced a new security policy. *See Davis v. State*, 195 S.W.3d 311, 314–15 (Tex.App.-Houston [14th Dist.] 2006, no pet.). Judge Harmon explained:

> The Court is of the opinion this is going to be a general change in courtroom security, where people who are accused of felony offenses ... facing a minimum of fifteen years in prison to life ... are to be secured during trial ... this is a general plan by the court to increase the security in the courtroom while jurors are present.

*Id.*

This type of routine shackling is specifically prohibited both by the United States Supreme Court and the Court of Criminal Appeals. *See Deck v. Missouri*, 544 U.S. 622, 626–27, 125 S.Ct. 2007, 161 L.Ed.2d 953 (2005); *Long v. State*, 823 S.W.2d 259, 283 (Tex.Crim.App.1991) (stating that the fact a person is charged with a serious felony cannot override that person's constitutional right not to be shackled). As noted by the majority, appellant had not threatened harm or escape and was medically unable to commit violence due to his diabetic condition. Still, the trial court judge ordered that appellant be shackled during trial. The majority finds no harm because the trial court judge told defense counsel that the jury could not see the shackles.[1] Both the United States Supreme Court and Court of Criminal Appeals have recognized that the accused may suffer harm even when the jury is unaware of shackles. Factors we consider in determining harm include: (1) its probable collateral implications; (2) the source and nature of the error; and (3) whether declaring it harmless would encourage its repetition with impunity. *Orona v. State*, 791 S.W.2d 125, 130 (Tex.Crim.App.1990).[2]

This type of needless restraint has significant collateral implications. Restraining the accused offends the dignity and

---

1. Though in certain circumstances Texas courts have found that no harm results from restraining the accused when the restraints were not visible, this case goes beyond an affirmative showing of visible shackles. Contrary to the majority's analysis, our Court has held that a trial court's error in ordering a defendant be shackled is not exclusive to cases involving visible shackles or the defendant's inability to communicate with counsel. *See Davis*, 195 S.W.3d at 318–19. A defendant's right not to be shackled also encompasses: (1) the courtroom's formal dignity; (2) the respectful treatment of defendants; (3) embarrassment and distraction to the defendant; (4) the physical burden and pain of restraints; and (5) interference with a defen-

dant's thought process. *Id.* at 318 (citing *Deck*, 544 U.S. at 626–27, 125 S.Ct. 2007; *Brown v. State*, 877 S.W.2d 869, 871 (Tex. App.-San Antonio 1994, no pet.); *People v. Harrington*, 42 Cal. 165, 168 (1871); *United States v. Durham*, 287 F.3d 1297, 1304 (11th Cir.2002)).

2. The majority concludes that these factors are irrelevant in our harm analysis because the instant case does not entail visible restraints or impaired communication. Our Court held in *Davis* that these factors are considered in any non-structural constitutional error analysis, such as the appeal before us. *Davis*, 195 S.W.3d at 317.

decorum of judicial proceedings. *See Deck,* 544 U.S. at 631, 125 S.Ct. 2007 (stating that routine shackling undermines the courtroom's formal dignity and respectful treatment to defendants); *Brown v. State,* 877 S.W.2d 869, 871 (Tex.App.-San Antonio 1994, no pet.) (stating that physical restraints insult the court and its proceedings). Moreover, restraints are distracting and embarrassing for the accused and potentially impair his ability to participate in his own defense. *Deck,* 544 U.S. at 631, 125 S.Ct. 2007 (citing *People v. Harrington,* 42 Cal. 165, 168 (1871) (noting that shackles impose physical burdens, pains, and restraints that tend to confuse and embarrass the accused and materially abridge and prejudicially affect his constitutional rights)); *Brown,* 877 S.W.2d at 871 (stating that less overt, but just as harmful, is the interference that a physical restraint causes with the accused's thought processes, the use of his mental faculties, and his ability to communicate with counsel during trial).

The nature and source of this error is the trial court, which is of great significance in our harm analysis. *Davis,* 195 S.W.3d at 319; *Ex parte Werne,* 118 S.W.3d 833, 837 (Tex.App.-Texarkana 2003, no pet.) (stating that it is of substantial importance when the source of the error is the court itself). Judge Harmon, in this case and at least five other cases, shackled defendants in the face of well-established constitutional law. *See Grayson v. State,* 192 S.W.3d 790, 792 (Tex. App.-Houston [1st Dist.] 2006, no pet); *Davis,* 195 S.W.3d at 318–19; *Boone v. State,* 230 S.W.3d 907, 911 (Tex.App.-Houston [14th Dist.] 2007, no pet); *Ramirez v. State,* No. 14–05–00435–CR, 2006 WL 2345952, at \*3 (Tex.App.-Houston [14th Dist.] August 15, 2006, no pet.) (mem. op., not designated for publication); *Wiseman v. State,* 223 S.W.3d 45, 50–51 (Tex.App.-Houston [1st Dist.] 2006, pet. ref'd). He continued a practice and policy of needlessly restraining defendants contrary to the law's repugnance of such restraints. I fear that the majority's finding of harmless error will encourage the practice of needlessly restraining a defendant so long as a judge carefully protects the record. *See Garcia v. State,* 919 S.W.2d 370, 381 (Tex.Crim.App.1994) (finding error harmful based in part on fear of encouraging repetition); *Davis,* 195 S.W.3d at 315; *Kelly v. State,* 903 S.W.2d 809, 812 (Tex.App.-Dallas 1995, pet. ref'd) (finding harm based solely on need to prevent repetition of error that was committed at least two other times in past year). Accordingly, I would find error in this case, and reverse and remand for a new trial.