

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00488-CR

| | | |
|---|---|---|
| Ronnie Jraun Otems, Jr. | § | From the 89th District Court |
| | § | of Wichita County (51,235-C) |
| v. | § | December 6, 2012 |
| | § | Per Curiam |
| The State of Texas | § | (nfp) |

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was no error in the trial court's judgment. It is ordered that the judgment of the trial court is affirmed.

SECOND DISTRICT COURT OF APPEALS


PER CURIAM



## COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-11-00488-CR

RONNIE JRAUN OTEMS, JR.                                          APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

----------

### FROM THE 89TH DISTRICT COURT OF WICHITA COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

In three points, Appellant Ronnie Jraun Otems, Jr. appeals his four convictions, complaining of the trial court's actions before and during his trial. We affirm.

## II. Factual and Procedural Background

In his appellate brief, Otems sets out the following background:

---

[1]*See* Tex. R. App. P. 47.4.

The facts surrounding Appellant's charges here are the stuff of a Hollywood action film and are largely uncontroverted at trial. On September 23, 2009[,] Mr. Otems was being held in the Wichita County jail awaiting trial on an unrelated charge. He was placed in a single cell at the annex facility, a former warehouse retrofitted to serve as a jail. After a series of altercations with staff which he described as abuse, Mr. Otems used his impressive strength to pry loose a metal table bolted to the cinderblock wall. He then used the table as a tool to beat on and pry back a steel plate covering the internals of the cell's shower. Removing the plate exposed a small hole allowing access to a pipe chase behind the cell. Two pieces of rebar blocked Mr. Otem[s]'s egress through the hole, but he was able to bend them out of place enough to allow access to the pipe chase. Appellant entered the pipe chase and re-entered his cell multiple times, one time standing in the dark directly next to a detention officer investigating noise in the pipe chase. Back in his cell, Mr. Otems removed several long screws that held the shower plate to the wall and sharpened them to a point. He bound the screws to his hands with strips of his bed sheet and exited a final time into the pipe chase. He climbed the pipes and was able to position himself on top of the cells, with room to walk below the tall ceilings of the jail. He disabled a security camera and climbed hand over hand across a hallway on an electrical conduit and headed for the area he believed controlled the electrical power for the facility. Mr. Otems had previously tripped the breakers in his cell by jamming a paperclip in the electrical socket and watched which direction the guard went to fix the problem. When Mr. Otems arrived at an electrical box he began to flip switches and tear out wires causing the lights to go out and the electric doors to lock.

According to the record, Otems then attacked Officer Samuel Hankins, stabbing him four times. When Officer Michael Bonnin went to help, Otems charged at him and punched him in the face three times. During this struggle, Otems also lunged at Officer Dustin Lowery and swung at him several times. At trial, Officer Bonnin testified that he did not feel any pain when Otems struck him, and based on this testimony, Otems moved for a directed verdict on the

aggravated-assault-on-a-public-servant charge pertaining to Officer Bonnin, designated as Count II in the indictment. The trial court denied the motion.

After a pretrial hearing on shackling, Otems was shackled, handcuffed, and attached to a large metal plate on the floor throughout the trial. However, all of this was obscured from the jury's view by a black curtain. And after Otems complained about having supervised visits with his attorney, he was allowed private meetings in the courtroom with his attorney during breaks.

The jury found Otems guilty in Count I for aggravated assault on a public servant (Officer Hankins), in Count II for the lesser included offense of attempted aggravated assault on a public servant (Officer Bonnin), in Count IV for possession of a deadly weapon in a penal institution, and in Count V for escape. The jury found Otems not guilty in Count III, attempted aggravated assault on a public servant (Officer Lowery). The jury assessed the following years of confinement as Otems's punishment: seventy-five for Count I, sixty for Count II, thirty-five for Count IV, and thirty-five for Count V, and the trial court entered judgment on the verdict, ordering the sentences to run concurrently with each other but consecutive to the sentence for which Otems was in prison at the time he committed these offenses. This appeal followed.

### III. Restraints

In his first point, Otems complains that the trial court abused its discretion by allowing him to be shackled during trial. *See Jacobs v. State*, 787 S.W.2d 397, 407 (Tex. Crim. App.) (stating standard of review), *cert. denied*, 498 U.S.

4

882 (1990); *see also Long v. State*, 823 S.W.2d 259, 282 (Tex. Crim. App. 1991), *cert. denied*, 505 U.S. 1224 (1992).

As a general rule, a jury should not be allowed to see a defendant in shackles during the guilt-innocence phase of trial because it affects the defendant's presumption of innocence. *See Marquez v. State*, 725 S.W.2d 217, 227 (Tex. Crim. App.), *cert. denied*, 484 U.S. 872 (1987), *overruled on other grounds by Moody v. State*, 827 S.W.2d 875, 892 & n.7 (Tex. Crim. App. 1992). Only in rare circumstances is shackling called for, and the trial court must set forth with specificity the reasons for it in the record. *Long*, 823 S.W.2d at 282; *see also Davis v. State*, 195 S.W.3d 311, 315–16 (Tex. App.–Houston [14th Dist.] 2006, no pet.) (stating that there must be a showing of manifest need or exceptional circumstances, such as when a defendant poses a threat to himself or others, assessed on a case-by-case basis).

In *Long*, the court of criminal appeals stated the following with regard to the lack of specific findings of fact justifying the use of shackles:

> In the present cause, the trial judge did not make specific findings of fact justifying the use of shackles, but rather stated in the record general concerns regarding security because appellant was charged with capital murder. Indeed, the facts of this case are brutally violent, but there is no other evidence in the record of violence or threatened violence by appellant *during this trial*. The fact that a person is *charged* with the most serious of felonies cannot override that person's constitutional presumption of innocence. Moreover, the trial judge noted that appellant had been well-behaved during pre-trial proceedings. While the trial judge's concern with security during trial is certainly admirable, we find that these reasons are not sufficiently specific to support the judge's decision to have appellant shackled from the commencement of his trial. Thus,

5

> on the basis of this record, we hold the trial judge abused his discretion in shackling appellant prior to trial.

823 S.W.2d at 283 (footnote omitted). Despite concluding that the trial court abused its discretion, however, the court held that the appellant was not prejudiced or harmed because he had "fail[ed] to direct our attention to any place in the record showing that the jury actually saw the shackles," and the trial court had taken measures to prevent the jury's exposure to the shackles. *Id.*

As in *Long*, the trial court here did not make findings regarding its shackling decision. *See id.* In contrast to *Long*, however, in addition to Otems's instant charges, which were all subject to enhancement with Otems's prior convictions for aggravated robbery and assault on a public servant, at the pretrial hearing on shackling, Deputy Chief Derek Meador of the Wichita County Sheriff's Office testified that while in jail, Otems had been involved in several incidents requiring the use of force against him, had an above-average number of disciplinary cases, had created weapons while in jail, and, on multiple occasions, had said that he intended to stab an officer. Deputy Meador described Otems as unpredictable and said that he believed Otems would potentially serve as a threat to himself or others during the course of the trial. Deputy Meador stated that on the night before the shackling hearing, Otems had told officers that he did not understand why he had been placed in a smock to prevent self harm "because he wasn't suicidal, *he was homicidal*." [Emphasis added.]

6

Starla Jones, the assistant district attorney, testified that for at least one of Otems's pretrial hearings, Otems had been brought in strapped down to a metal restraint chair, the only inmate that she could recall ever having been brought in that way in the eleven years she had been a prosecutor. And Royce Smithey, the chief investigator for the State of Texas's special prosecution unit, testified that Otems had several cases pending against him for assaults on prison guards, and that, based on Otems's past actions and the special precautions taken with Otems in the controlled environment of a jail, "I think you put in a situation where [Otems] is not under the constant control of some type of restraint, I think you're asking for possible problems, major problems, dangerous problems."

Notwithstanding that, even without the express fact findings, the foregoing showed a manifest need to have Otems shackled during trial, it is also apparent from the record that Otems was not harmed: the trial court had a black curtain placed around the table to prevent the jury from seeing Otems's hands or feet. *See id.* at 282. Otems directs us to no place in the record showing that the jury saw him in restraints, and absent evidence that the jury actually saw the shackles, we cannot conclude that he was harmed. *See id.* at 283; *see also Canales v. State*, 98 S.W.3d 690, 697–98 (Tex. Crim. App.) ("Nothing in the record indicates that the jury ever saw or heard or was otherwise aware that appellant was wearing shackles."), *cert. denied*, 540 U.S. 1051 (2003). Therefore, we overrule Otems's first point.

7

# IV. Communication

In his second point, Otems complains that he was unable to communicate with his attorney before and during trial, specifically with regard to the presence of guards during his jail meetings with his attorney. The following exchange occurred between the court and counsel for Otems before trial:

[OTEMS'S COUNSEL:] Yeah, I will just make a statement to the Court real quick. Judge, we've had some issues with communication with Mr. Otems. As Captain Johns noted, I've been available—I've been able to come to the Court—oh, I'm sorry—come to the jail and visit with Mr. Otems at any time. They've been quite good with that.

However, while we've been in the jail *there's been a requirement that two officers be in the hallway. Sometimes they may be next to me. Sometimes they've been farther away and while I appreciate that for, you know, for myself*, you know, the—the nature of these charges are assaults against members of the Sheriff's Office, which makes it somewhat difficult to discuss both the trial strategy and just—just free and open communication with Mr. Otems at this time.

We are prepared to go forward, but I'm not sure what—what possible information may have been stifled from Mr. Otems by the Sixth Amendment violation to his right to an attorney during this time. Thank you.

[PROSECUTOR:] Your Honor, I haven't heard of this. I don't know exactly, you know, what the situation is up there. I can say that I know myself—neither myself nor Mr. Young or Ms. Jones have had any communication with any detention officers and we certainly have not received any information. So with regard to that, that's—that's all I know.

THE COURT: What relief is sought?

[OTEMS'S COUNSEL]: *I haven't really asked for relief at this time* other than the opportunity in the future to visit with Mr. Otems

8

privately and to lay the objection before the Court for the previous incidents.

[Emphasis added.]

Following the foregoing exchange between the trial court and Otems's counsel, further discussion ensued:

[PROSECUTOR]: Depending on what the Court wants in this case, you know, [Otems's attorneys], I mean, we have no objection if—if they would want unsecured meetings with the Defendant either in the jury room or the lawyer's lounge. I don't know if the Sheriff's Department has a problem with that, I don't know if the Court does, but we would have no objection to that or—or meetings inside of a jail cell with—with no guards.

[OTEMS'S COUNSEL]: Additionally, I think there may be an issue with—that [Otems's other counsel] spoke to you earlier about today being able to confer with [Otems] going forward through the trial. It doesn't appear that he's able to move from the steel plate on the floor, so that may be something to consider about how we want to handle that as well.

THE COURT: Well, the steel plate on the floor is going to remain. Now, as far as conferring, we will try to afford you every opportunity. We will be taking breaks during the jury selection. They have an opportunity then and when nobody else will be in the courtroom, all right, subject to I guess the—maybe the deputies being at the back, I don't know, because I'm not in the security business. I'm just in charge of it, supposedly, under the law.

But as far as the actual handling of the Defendant, I've got to leave that to the discretion of the Sheriff and balance it out with the constitutional rights, obviously of Mr. Otems. So if possible, and if—if it's acceptable with the Sheriff's Office, then we could have them stand at the back of the courtroom or perhaps you and your—well, that's not going to work because you can't move the plate—to ask everybody else to leave and you would have an opportunity to confer.

[OTEMS'S COUNSEL]: Thank you, Your Honor. I appreciate that.

9

THE COURT: And during the course of the trial, we will be taking breaks and we'll see to it that everybody leaves the courtroom and you'll have the opportunity to confer then. It's not the Court's intentions to prevent any conferring. It's just what we're going to have to tolerate to get there, okay?

[OTEMS'S COUNSEL]: Thank you, Judge.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a)(1); *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009). Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004). A reviewing court should not address the merits of an issue that has not been preserved for appeal. *Wilson v. State*, 311 S.W.3d 452, 473 (Tex. Crim. App. 2010) (op. on reh'g).

Assuming the discussions above can be construed as an objection by Otems's counsel, though apparently for which no relief was sought, Otems's counsel indicated at the conclusion of the discussions that he was satisfied with the State's proposals and the trial court's decision; he made no further objection. Under these circumstances, because no further error, if any, was preserved for our review, we overrule Otems's second point.

10

## V. Directed Verdict

In his third point, Otems complains that the trial court erred by overruling his motion for directed verdict on Count II, aggravated assault on a public servant, because the State failed to prove a bodily injury. However, though the trial court denied Otems's request, the jury found Otems not guilty of this count anyway before finding him guilty of the lesser included offense, which did not require bodily injury, rendering this point moot. *See* Tex. Code Crim. Proc. Ann. art. 37.08 (West 2006) ("In a prosecution for an offense with lesser included offenses, the jury may find the defendant not guilty of the greater offense, but guilty of any lesser included offense."); *see also Douthit v. State*, No. 06-02-00007-CR, 2003 WL 1922490, at *1 (Tex. App.—Texarkana Apr. 24, 2003, no pet.) (not designated for publication). We overrule Otems's third point.

## VI. Conclusion

Having overruled Otems's three points, we affirm the trial court's judgment.

PER CURIAM

PANEL: MCCOY, WALKER, and GABRIEL, JJ.

WALKER, J., concurs without opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: December 6, 2012

11