**Ex parte George E. WERNE.**

**No. 06-03-00077-CR.**

Court of Appeals of Texas, Texarkana.

Submitted Sept. 3, 2003.

Decided Sept. 11, 2003.

---

14.....

   G.F. Stovall, Stovall & Shelton, Hughes Springs, for appellant.

Charles C. Bailey, Titus/Camp County Dist. Atty., Mount Pleasant, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

In this appeal, we consider whether the untimely handling of one application for writ of habeas corpus requires that a subsequent application for writ of habeas corpus be granted.

## I. Background

George E. Werne was arrested on September 2, 2002, for minor traffic and weapons offenses. Soon thereafter officials discovered Werne was wanted as a fugitive by the State of Mississippi. Werne satisfied his sentences on the Texas misdemeanor offenses by mid-September 2002, but remained confined in the Titus County jail pursuant to the Mississippi warrant. Two months passed, with Werne still in jail, without an attorney, and with no bond set, pending resolution of the Mississippi fugitive warrant.

On November 12, 2002, Werne filed a pro se application for habeas corpus relief (herein the First Application) and declared his indigence. Over two months later, on January 15, 2003, a hearing was conducted on the First Application. Following the hearing, the trial court released Werne on a $5,000.00 personal recognizance bond. Meanwhile, Rick Perry, the Governor of the State of Texas, issued a warrant for Werne's arrest based on the Mississippi fugitive warrant. On January 21, 2003, law enforcement officials executed the Texas Governor's warrant and rearrested Werne on the Mississippi charges. During his second incarceration, Werne again asked for appointed counsel. This time the trial court granted his request, and Werne's appointed counsel filed a second application for writ of habeas corpus (herein the Second Application) on February 12, 2003. A hearing on the Second Application was conducted eight days later.

Following the February 20 hearing, the trial court denied Werne's Second Application. The trial court recognized that Werne had been illegally detained from December 2002 through January 15, 2003, but concluded the illegal detention did not taint the efficacy of the warrant issued by the Governor of Texas for Werne's arrest based on the Mississippi charges.

Werne appeals the trial court's denial of his Second Application. Werne's four points of error on appeal assert the trial court erred by: (1) refusing to release Werne unconditionally on his First Application, (2) not conducting a timely hearing on his First Application, (3) denying Werne's Second Application in light of his prior illegal detention, and (4) by denying Werne's right to counsel at the time he filed his First Application. For the rea-

sons stated below, we affirm the trial court's judgment.

## II. Issues Related to the First Application

■ In his first, second, and fourth issues, Werne challenges alleged errors in connection with his First Application. Werne did not appeal the trial court's denial of relief on that application. The case now before us is an appeal of the trial court's denial of Werne's Second Application. Because Werne did not appeal the trial court's judgment on his First Application, we are without jurisdiction to address those issues relating to the trial court's denial of the Second Application. *See generally* TEX.R.APP. P. 26.2(b); *Ex parte Okere*, 56 S.W.3d 846 (Tex.App.-Fort Worth 2001, pet. ref'd) (discussing appellate jurisdiction to review merits of denial of habeas relief).

## III. Issue Related to the Second Application

In his third point of error, Werne contends the trial court erred by denying his Second Application. In this Second Application, Werne sought to challenge his pretrial incarceration based on the Texas Governor's warrant. Werne argues on appeal that the trial court's failure to grant relief on his First Application deprived him of his constitutional right to liberty and that this deprivation cannot be cured by subsequent issuance and service of a valid Governor's warrant.

■ We agree with the trial court's subsequent acknowledgment that, in failing to release Werne unconditionally after the first habeas corpus hearing, it erred.[1] The existence of error on the First Application does not, however, resolve the issue presented in the case now before us-whether the trial court erred in denying Werne's Second Application.

■ Werne does not contest the propriety of the warrant issued by Governor Perry. Instead, Werne argues that, in light of the fact the trial court erred so grievously by delaying a hearing on his First Application for over two months, and then by releasing him only on a bond rather than granting unconditional release

---

1. Our law permits someone who is incarcerated to file a pretrial application for writ of habeas corpus. TEX.CODE CRIM. PROC. ANN. arts. 11.08, 11.09 (Vernon 1977). Once an application for pretrial habeas corpus relief is filed, the trial court *must schedule* a hearing on the application for the *earliest day* which the trial court can devote to a hearing on the application. TEX.CODE CRIM. PROC. ANN. arts. 11.10, 11.11 (Vernon 1977). In the case of Werne's First Application, the trial court waited more than two months between the time Werne filed his application and the time the trial court conducted a hearing. We believe this two-month delay was presumptively unreasonable, especially when Werne had been confined since September 2, 2002. The delay demonstrated an abuse of discretion by the trial court in scheduling its docket.

Furthermore, our Legislature has mandated the release of any fugitive confined for more than ninety days but not arrested pursuant to a warrant issued by the Governor of Texas. *See* TEX.CODE CRIM. PROC. ANN. art. 51.07 (Vernon 1979). By the time the trial court conducted a hearing on Werne's First Application, Werne had been an unwilling guest of the Titus County jail for more than 120 days. The record shows Titus County officials had not received a valid warrant issued by the Governor of Texas on January 15, 2003. Accordingly, the trial court should have released Werne without any restriction at the conclusion of the hearing. TEX.CODE CRIM. PROC. ANN. arts. 51.07, 51.08 (Vernon 1979); *Ex parte Steel*, 155 Tex.Crim. 93, 230 S.W.2d 233 (1950); *see also Lanz v. State*, 815 S.W.2d 252, 254 (Tex.App.-El Paso 1991, no pet.). This, however, is not what the trial court did; it instead placed Werne on a $5,000.00 personal recognizance bond with instructions not to leave Titus County. Werne was rearrested on a Governor's warrant six days later.

as demanded by our law, this constituted an unconstitutional infringement on individual liberty that cannot be rendered acceptable by an untimely Governor's warrant. We cannot agree that a later, properly issued Governor's warrant should be disregarded.

■ Werne takes the position that his second incarceration constitutes a form of constitutional error because he was unlawfully jailed while the trial court disregarded his efforts to obtain the freedom to which he was entitled. It is true that, if a liberty interest is created by a statute, due process concerning that liberty interest requires notice and a meaningful opportunity to be heard. *LaChance v. Erickson,* 522 U.S. 262, 266, 118 S.Ct. 753, 139 L.Ed.2d 695 (1998); *Ex parte Geiken,* 28 S.W.3d 553, 560 (Tex.Crim.App.2000). In this case, Werne's liberty interests were denied in connection with the First Application.[2] Werne asks this Court to recognize those errors in our review of the Second Application and to penalize the trial court for its previous failures by directing that the State be prohibited from enforcing the current Governor's warrant. The State suggests that we might instead merely treat these as two separate proceedings and not consider one in reviewing the other. We decline both invitations.

We will not declare that there is no instance in which such an error might be so great as to fatally corrupt a later proceeding. In this case, however, we do not so conclude. The error was ultimately rectified, although at the cost of six unnecessary weeks in jail for Werne. That error, however, has not contaminated the present proceeding, which involves a proper Governor's warrant and arrest pursuant to that warrant. *Cf. Lanz v. State,* 815 S.W.2d 252, 254 (Tex.App.-El Paso 1991, no pet.).

■ Even were we to find it proper to fully merge these two proceedings and apply the rule controlling our review of harm resulting from error of constitutional magnitude, we would not find reversible error. In such a review, we must reverse the judgment of the trial court unless we determine beyond a reasonable doubt the error did not contribute to the conviction.[3] When performing this analysis, the Texas Court of Criminal Appeals has held that the following factors are to be considered: 1) the source of the error; 2) the nature of the error; 3) whether the error was emphasized and its probable collateral implications; 4) the weight a juror would probably place on the error; and 5) whether declaring the error harmless would encourage the State to repeat it with impunity. *Orona v. State,* 791 S.W.2d 125, 130 (Tex.Crim.App.1990). No single factor is dispositive. Instead, the existence and severity of these factors are indicative of the harm caused by the improper conduct. *Wilson v. State,* 938 S.W.2d 57, 61 (Tex. Crim.App.1996); *Wead v. State,* 94 S.W.3d 131, 137 (Tex.App.-Corpus Christi 2002, pet. granted).

In this case, only the first and fifth factors are implicated by this analysis. The source of the error was evidently the court itself. That alone is of substantial importance. The fifth factor is whether declaring this behavior harmless would en-

**2.** Our law creates a liberty interest by requiring the release of an incarcerated individual unless specific conditions are met. The trial court violated Werne's constitutional rights by failing to act in a timely and appropriate manner in accordance with the statutory requirements, thus depriving him of his liberty without due process of law. *Ex parte Barnett,* 600 S.W.2d 252, 254 (Tex.1980); *In re Butler,* 45 S.W.3d 268, 270 (Tex.App.-Houston [1st Dist.] 2001, orig. proceeding).

**3.** Tex.R.App. P. 44.2(a).

courage the court to repeat it, confident that it could do so with impunity. We are not convinced the trial court would choose to act in such a fashion. The judicial system rests on our trial courts' timely and correct application of the law, and in the absence of any indication that the error by this trial court was intentional, as opposed to accidental or inadvertent, we are unwilling to assume the trial court would willfully ignore the law. We therefore find no harm.

We affirm the judgment.