# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-22-00464-CV

---

**Daniel James Caldwell, Appellant**

**v.**

**The State of Texas for the Protection of Jennifer Zimmerman, Appellee**

---

### FROM THE COUNTY COURT AT LAW NO. 4 OF WILLIAMSON COUNTY
### NO. 22-0072-POC4, THE HONORABLE MICHAEL E. DENTON, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

Appellant Daniel James Caldwell, acting pro se, appeals from the trial court's lifetime protective order in favor of his ex-wife, Jennifer Zimmerman, and child (Child). *See generally* Tex. Code Crim. Proc. art. 7B.[1] Caldwell has also filed an original application for writ of habeas corpus asking that we vacate the lifetime protective order, a 2014 order granting Zimmerman's suit to modify the parent-child relationship (Modification Order), and a 2018 order designating Caldwell a vexatious litigant (Vexatious Litigant Order). For the following

---

[1] We cite to the versions of statutes in effect in 2022 when the underlying conduct was committed and the protective order was entered. Chapter 7B, section 42.072 of the Texas Penal Code, and title 4 of the Texas Family Code were all amended effective September 1, 2023. *See Bevers v. Mabry*, No. 05-22-00713-CV, 2024 WL 469550, at *5 n.5 (Tex. App.—Dallas Feb. 7, 2024, pet. filed). Moreover, prior to January 1, 2021, the statutes currently codified in chapter 7B were in chapter 7A, which was repealed and reenacted in chapter 7B in a non-substantive revision. *See* Act of May 21, 2019, 86th Leg., R.S., ch. 469, art. 1, § 1.02, art. 3, § 3.01, 2019 Tex. Gen. Laws 1065, 1066, 1151.

reasons, we affirm the trial court's lifetime protective order and dismiss the habeas application for want of jurisdiction.

## BACKGROUND

On June 13, 2022, the State filed an application for a lifetime stalking protective order against Caldwell on behalf of Zimmerman, who provided a sworn affidavit in support of the application. *See id.* art. 7B.001 (addressing applications for protective orders); Tex. Penal Code § 42.072 (stating elements of stalking). The judge who had signed the Modification Order voluntarily recused himself, and a substitute judge was appointed to preside over the protective-order proceedings.

The trial judge issued a temporary protective order (TPO), and on June 28, 2022, Caldwell responded by filing pro se a special appearance and application for writ of habeas corpus, in which he asserted that he was "illegally restrained in [his] liberty" by the Modification Order, TPO, and Vexatious Litigant Order. *See* Tex. Code Crim. Proc. art. 7B.002 (addressing temporary ex parte orders).

On July 1, 2022, a hearing was held on the State's amended protective-order application.[2] During the hearing, it became apparent that Caldwell had not been served with a copy of Zimmerman's affidavit and that it was unclear whether he had received a copy of the amended application. Caldwell requested that the trial court hear his habeas application, but the trial judge declined, explaining that it was "outside of [his] appointment" and that the State would need additional time to prepare. On learning from the State that he was the subject of a criminal investigation into the conduct underlying the protective-order application,

---

[2] The application was amended to correct Caldwell's service address.

Caldwell requested the appointment of counsel. The trial court granted the request and reset the proceeding.

A second hearing was held on July 15, 2022, at which Caldwell was represented by appointed counsel. The State called as witnesses Caldwell, Zimmerman, and Round Rock Police Department (RRPD) Officer Dillon Rizzo. Caldwell also testified on his own behalf. Evidence admitted at the hearing included voicemails left by Caldwell on Zimmerman's phone, surveillance video from her house, and a copy of the Modification Order. The trial court took judicial notice of the State's case file in Caldwell and Zimmerman's custody case.

Caldwell was admonished by the trial court regarding his Fifth Amendment privilege and elected to testify. He testified that he and Zimmerman were married from July 2007 to May 2010, that they separated in November 2009, and that they had one child together. Child's custody was the subject of the Modification Order, which included a finding that Caldwell had a "history or pattern of past or present child neglect"; granted Zimmerman sole managing conservatorship and possession of Child "at all times"; allowed Caldwell to have phone access to Child on certain Sundays and holidays; and prohibited Caldwell from communicating with Zimmerman except for periods of phone access, remaining within 300 feet of her residence or place of employment, or interfering in any way with her possession of Child.

Caldwell testified that he last saw Child in 2013 and that on June 3, 2022, he came to the Austin area to look for housing and familiarize himself with the location of his new job. Although he frequently invoked the Fifth Amendment when questioned about the events of that week, he testified that he was not at Zimmerman's house, that police had issued him a criminal trespass warning to "[e]nsure that [he] did not step onto her property," that he did not tell police that Child was old enough to make his or her own decisions, and that he had not done

3

"anything directed at" Zimmerman. On cross-examination, he testified that she had not made Child available during his periods of phone access and that a protective order would not be in Child's best interest.

Zimmerman testified about a 2018 incident as well as Caldwell's actions in June 2022. The Modification Order had removed Caldwell's right to possession and replaced it with limited phone access. Since the Modification Order was entered, he had continued to make "disparaging remarks" during calls and had shown up at Child's location on multiple occasions.

In 2018, he learned that Child would be at a public library and came to see Child. Zimmerman physically blocked Caldwell from entering the library and called the police, who asked him to leave. Later that day, he came to her house in Williamson County, Texas. She saw his vehicle and again called the police, who issued Caldwell a trespass warning.

Caldwell next came to her house on the weekend of June 3, 2022. Surveillance video from cameras at the house show him arriving at approximately 11:25 a.m. and sitting in her neighbor's yard "staring at [Zimmerman's] house." Zimmerman testified that Caldwell left two voicemails on her phone, walked away, and reappeared in the video at 1:02 p.m., driving his car, and again at 6:09 p.m. when he left her a third voicemail. That evening, he erected a tent in the street in front of her house. She called the police because she was "[t]errified" and felt his actions to be "very erratic and harassing." He left after speaking with officers.

Zimmerman testified that Caldwell returned the following morning at approximately 3 a.m., stopped his car in front of her house, and eventually made a U-turn. He came back on foot around 9 a.m. and was "walking in circles in the street in front of [her] house," which made her feel "[s]cared, terrified, harassed, alarmed." She called the police, and officers once more responded to her house.

4

On Sunday, June 5th, Caldwell made his scheduled call to Child. Zimmerman listened to the call, during which Caldwell told Child that he was outside on the street corner, asked Child to come see him, and stated that he could not visit Child because Child was at Zimmerman's house. Zimmerman's husband went outside and saw Caldwell at "the top of the street," and she called the police a third time. She testified that Caldwell's actions "make us afraid to leave our home"; that he "continues to claim that the [Modification Order] is invalid and continues to violate it"; and that he had previously told Child that he believed he had three options: wait to see Child when Child turns 18, modify the custody order, or become the "bad guy and just come and take" Child. Zimmerman also testified that she was scared for her and Child's safety; that she believed that Caldwell might hurt them; and that his actions had made her feel harassed, annoyed, alarmed, tormented, and upended.

On cross-examination, Zimmerman testified that the face of the man in the surveillance videos could not be clearly seen and that he had no identifying marks. She testified that it was possible the videos depicted two different vehicles, one of which was not Caldwell's, although she did not believe that to be the case. She also testified that he never stepped foot on her property and that the surveillance videos did not record any statements that he might have made.

Officer Dillon Rizzo testified that he responded to reports of a disturbance between Caldwell and Zimmerman at her house on June 5, 2022. He testified that he observed Caldwell speaking with officers; that Zimmerman was angry and terrified; and that "[h]er hands were trembling, her carotid artery was almost popping out of her neck, [and her] eyes [were] wide with fear and tears." Rizzo testified that he reviewed past 911 calls from the address and

5

noted "[m]ultiple disturbances ranging as far back as 2018." He also testified that RRPD had an open stalking investigation against Caldwell.

Caldwell, testifying in his own defense, explained that he had requested from RRPD public records "of every incident . . . that had [his] name on it." He testified that the records described a 911 call on June 4th, which the responding officer determined was unfounded; a report made on June 5th; and an incident on June 7th, when Caldwell was in Fort Worth. He testified that he was not a threat to Child and that he saw this as Zimmerman "making up false facts in order to build a case because she wants to bolster her claim that [he was] harassing her at odd hours and not because [he had] actually done anything menacing, harassing, threatening . . . or obscene or to intentionally annoy, bother, molest or harass her."

The trial court found that reasonable grounds existed to believe that Zimmerman was a victim of stalking, granted the State's application, and entered a lifetime protective order against Caldwell "with the understanding that the child when [Child] turns 18 can come in and ask to have the protective order modified or removed as to [Child]." Among the conditions imposed as part of the protective order, the trial court ordered that Caldwell not go within 200 yards of Zimmerman's or Child's residence, place of work, or school; that Caldwell maintain the phone access to Child provided for in the Modification Order; that with limited exceptions, including the phone access, he avoid communicating with Zimmerman or Child; that he not harass, threaten, or harm Zimmerman or Child; and that he be prohibited from possessing a firearm as defined by section 46.01 of the Texas Penal Code. *See* Tex. Code Crim. Proc. art. 7B.005 (listing conditions that may be imposed in order); Tex. Penal Code § 46.01.

On July 29, 2022, Caldwell filed a pro se "NOTICE OF APPEAL, REQUEST FOR FINDINGS OF FACT AND CONCLUSIONS OF LAW; MOTION FOR REHEARING,

6

RECONSIDERATION, OR NEW TRIAL; MOTION TO CONSOLIDATE, OR IN THE ALTERNATIVE, TO EXPUNGE; MOTION FOR MODIFICATION AND REQUEST FOR JURY TRIAL; AND RENEWAL OF REQUEST FOR HABEAS CORPUS RELIEF" (Omnibus Motion). Following a hearing on the motion, the trial court found that Caldwell's counsel had been effective, denied Caldwell's motion to consolidate the protective-order proceeding and the suit modifying the parent-child relationship, granted his request for findings of fact and conclusions of law, and denied his motion for new trial. Further, the trial judge ruled, "To the extent you have asked for a habeas corpus, because it restricts your possession of firearms I have denied that, because the law is clear on that, I believe."

On August 5, 2022, the trial court entered the following relevant findings of fact and conclusions of law:

Findings of Fact

5. Respondent rented an Airbnb about three blocks from Applicant's residence in early June 2022.

6. Beginning in June 2022, the Respondent began a series of actions that placed the Applicant in fear for herself, her child, and her property. These actions were found to constitute stalking.

7. Respondent's actions violated the Safety Terms of the 2014 Order.

8. During a phone call, the Respondent asked the child to leave [Child's] house and meet the Respondent, in violation of the 2014 Order.

9. The Respondent has told the child that his options were to wait until the child turned 18 to see [Child], modify the custody agreement, or kidnap [Child].

10. Applicant was reasonably frightened for her and her child's safety by Respondent's actions.

11. The Respondent's stalking placed the Applicant and Child in danger.

7

12. Applicant was harassed, alarmed, and tormented by Respondent's actions.

Conclusions of Law

2. The Court had jurisdiction over the subject matter of this cause.

. . . .

5. [The] Court finds there were reasonable grounds to believe the Applicant is the victim of Stalking.

6. The Respondent's conduct occurred on more than one occasion and was pursuant to the same scheme or course of conduct that is directed specifically at the Applicant.

7. A reasonable person in the situation would fear bodily injury or death for herself or himself, fear bodily injury or death for a member of the person's family or household, or fear that an offense will be committed against the person's property.

8. The Respondent knowingly engaged in conduct he knew or reasonably should have known that the Applicant would regard as threatening bodily injury or death for the Applicant, bodily injury or death for a member of Applicants' family or household, including the Child, or an offen[s]e would be committed against Applicant's property.

9. The Respondent's conduct caused the Applicant to be placed in fear of bodily injury or death for herself, bodily injury or death for a member of Applicant's family or household, including the Child, or an offense would be committed against her Property.

10. The Respondent's conduct caused the Applicant to feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended.

11. A reasonable person in the situation would feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended.

12. A Stalking Protective Order was granted for the protection of Applicant and Child.

8

**DISCUSSION**

Caldwell presents 14 issues[3] on appeal:

1.  "Whether the county court abused its discretion by violating Art. 11.11 et al. [of the Texas Code of Criminal Procedure] when refusing to hear or grant Caldwell's petition for writ of habeas corpus at any hearing";

2.  "Whether the county court abused its discretion by maintaining the restraining order, which is subject to the 4th Amendment warrants requirement of probable cause also contained in [Texas Code of Criminal Procedure] Art. 7B.052 & Sec. 9 of Tex. [B]ill of [R]ights";

3.  "Whether the county court abused its discretion by ordering Caldwell not to object or file any documents on his own behalf when represented in violation of the constitutional and statutory rights to assistance of counsel contained in [Texas Code of Criminal Procedure] Art. 1.051, Texas Bill of Rights Sec. 10, et al";

4.  "Whether the county court abused its discretion by allowing the State to call Caldwell as its [first] witness [in violation of the 5th Amendment and Tex. b.o.r. Sec. 10]";[4]

5.  "Whether the county court abused its discretion by rendering a judgment reserved to the jurisdiction of district courts, in violation of [Texas Code of Criminal Procedure] Art[s]. 4.05–4.07";

---

[3] The State correctly notes that several of Caldwell's issues are multifarious and combine numerous distinct grounds for challenging the protective order. *See Rich v. Olah*, 274 S.W.3d 878, 884–85 (Tex. App.—Dallas 2008, no pet.); *Hollifield v. Hollifield*, 925 S.W.2d 153, 155 (Tex. App.—Austin 1996, no writ). Nevertheless, with the exception of his second issue, we will address such arguments as we can discern with reasonable certainty in the interest of justice. *See Osojie v. Osojie*, No. 03-08-00688-CV, 2009 WL 2902743, at *4 (Tex. App.—Austin Aug. 27, 2009, no pet.) (mem. op.); *Green v. Kaposta*, 152 S.W.3d 839, 842 n.2 (Tex. App.—Dallas 2005, no pet.). To the extent that Caldwell seeks to raise complaints beyond those we have identified, we conclude that they were inadequately briefed, *see* Tex. R. App. P. 38.1(i), and disregard them as multifarious, *see Osojie*, 2009 WL 2902743, at *4. Further, we address the issues out of order for the sake of clarity and conciseness. "Although we attempt to construe a pro se appellant's briefing liberally, we must also hold pro se litigants to the same standards as licensed attorneys and require them to comply with applicable laws and rules of procedure." *Rader v. Berry*, No. 03-11-00810-CV, 2013 WL 6665075, at *1 (Tex. App.—Austin Dec. 11, 2013, no pet.) (mem. op.) (internal citations omitted).

[4] Brackets in original

9

6. "Whether the county court abused its discretion by holding Caldwell to answer for a felony without indictment, in violation of [Texas Code of Criminal Procedure] Art. 1.05, Tex. [B]ill of [R]ights Sec. 10, the 5th Amendment, et al";

7. "Whether the county court abused its discretion by rendering a judgment which treats Caldwell as guilty of a felony and denies him the presumption of innocence, in violation of [Texas Code of Criminal Procedure] Art. 38.03";

8. "Whether the county court abused its discretion by finding that Caldwell received the effective assistance of counsel guaranteed by the 6th Amendment and [Texas Code of Criminal Procedure] Art. 1.051 when holding that competent counsel would not have objected to the court allowing the State to call Caldwell as its witness";

9. "Whether the county court abused its discretion by not reporting the prosecutor's violation of the Texas Disciplinary Rules of Professional Conduct, Rule 8.04 prohibiting dishonesty, deceit, and misrepresentation, and Rule 3.09 to refrain from prosecuting or threatening charges unsupported by probable cause, as required by Rule 8.03";

10. "Whether the county court abused its discretion by concluding that reasonable grounds do not consist of being convicted or on deferred adjudication contrary to the express language of [Texas Code of Criminal Procedure] 7B.003(c)";

11. "Whether the county court abused its discretion by imposing lifetime criminal penalties equivalent to felony parole not authorized by [Texas Code of Criminal Procedure] Art. 7B.007(a-l)";

12. "Whether the county court abused its discretion by ruling as a matter of fact and law that mere presence 'being there,' without more, is enough to constitute felony stalking";

13. "Whether the county court abused its discretion by violating 18 USC Sec. 242 when depriving Caldwell of civil liberties protected by federal law because the legislature narrowed that authority with [Texas Code of Criminal Procedure] Art. 7B.003(c)";

14. "Whether the county court abused its discretion by refusing to consolidate cases with 09-3577-FC4 in order to allow simultaneous modification of the visitation order and any protective order based on public policy including the [Texas Family Code] chapter 153 requirements that the best interest of the child always be the primary consideration, as well as the

parties and subject matter being inseparably intertwined by far more than a general common nexus of material fact."

## I. Nature of Protective-Order Proceedings

Five of Caldwell's issues—concerning hybrid representation (issue 3), the trial court's jurisdiction (issue 5), the absence of an indictment (issue 6), the presumption of innocence (issue 7), and ineffective assistance of counsel (issue 8)—arise from his apparent belief that chapter 7B protective-order proceedings are criminal in nature.

Contrary to Caldwell's characterizations of the proceedings as criminal and the entry of the protective order against him as a conviction, "Chapter 7B protective-order proceedings . . . are undisputedly civil matters." *Goldstein v. Sabatino*, 690 S.W.3d 287, 291 (Tex. 2024). Although chapter 7B "authorizes a protective order when the court finds reasonable grounds to believe that the respondent engaged in conduct that would qualify as an offense under certain provisions of the Penal Code," "that is not akin to prosecuting the respondent for the underlying offense." *Id.*; *see also Keller v. Keller*, No. 03-21-00309-CV, 2023 WL 2169490, at *1 n.2 (Tex. App.—Austin Feb. 23, 2023, no pet.) (mem. op.) ("Although a protective order under the Code of Criminal Procedure is predicated on the applicant being a victim of a criminal offense, the proceedings on the application are civil proceedings." (citing *Beach v. Beach*, No. 01-19-00123-CV, 2020 WL 1879553, at *4 (Tex. App.—Houston [1st Dist.] Apr. 16, 2020, pet. dism'd w.o.j.) (mem. op.); *Ex parte Garza*, 603 S.W.3d 492, 496–97 (Tex. App.—Corpus Christi–Edinburg 2020, no pet.))). Entry of a protective order is not punitive but is designed to protect the applicant and members of the applicant's family or household from *future* harm. *See Goldstein*, 690 S.W.3d at 292; *see also* Tex Code Crim. Proc. art. 7B.005(a)(1). Thus, a protective-order proceeding is "not capable of depriving [a respondent] of his personal freedom";

11

rather, it exposes him "to the possibility that he *could* lose his personal freedom if he violate[s] the conditions of an imposed order and [is] found guilty of contempt." *Ex parte Garza*, 603 S.W.3d at 498 (emphasis added).

### A.    Hybrid representation

In his third issue, Caldwell contends that the trial court abused its discretion by not allowing him to object or file documents while he was represented by counsel during the protective-order hearing.[5]

In civil cases, a party is entitled to represent himself *or* to be represented by an attorney. Tex. R. Civ. P. 7. "However, a party is not entitled to representation partly by counsel and partly pro se." *In re S.V.*, 599 S.W.3d 25, 44 (Tex. App.—Dallas 2017, pet. denied); *In re Sondley*, 990 S.W.2d 361, 362 (Tex. App.—Amarillo 1999, orig. proceeding) (per curiam) (same); *Posner v. Dallas Cnty. Child Welfare Unit of Tex. Dep't of Hum. Servs.*, 784 S.W.2d 585, 588 (Tex. App.—Eastland 1990, writ denied) ("We hold that in civil cases as in criminal cases an appellant is not entitled to hybrid representation."). We overrule Caldwell's third issue.

### B.    Trial court's jurisdiction

In his fifth issue, Caldwell contends that the trial court rendered a judgment "reserved to the jurisdiction of district courts" in violation of articles 4.05, 4.06, and 4.07 of the

---

[5] Caldwell's citations to article 1, section 10 of the Texas Constitution and article 1.051 of the Code of Criminal Procedure are inapposite as they concern the rights of defendants in criminal proceedings and matters in which the accused faces the prospect of imprisonment. *See* Tex. Const. art. I, § 10 (listing rights of accused "[i]n all criminal prosecutions"); Tex. Code Crim. Proc. art. 1.051(a), (c) (providing right to counsel in "a criminal matter," "any adversary judicial proceeding that may result in punishment by confinement," and "in any other criminal proceeding if the court concludes that the interests of justice require representation").

Texas Code of Criminal Procedure, which concern criminal prosecutions. *See* Tex. Code Crim. Proc. arts. 4.05–.07.

"[A]s in any civil case, a court presiding over a Chapter 7B proceeding must have 'subject matter jurisdiction over the controversy and personal jurisdiction over the parties.'" *Goldstein*, 690 S.W.3d at 292 (quoting *TV Azteca v. Ruiz*, 490 S.W.3d 29, 36 (Tex. 2016)). However, article 4.05—which grants district courts and criminal district courts "original jurisdiction in criminal cases of the grade of felony, of all misdemeanors involving official misconduct, and of misdemeanor cases transferred to the district court under Article 4.17 of this code"—is inapplicable to the proceeding in this case. Tex. Code Crim. Proc. art. 4.05; *see Keller*, 2023 WL 2169490, at *1 n.2; *see also Goldstein*, 690 S.W.3d at 291 (holding that it is error to import "distinctly criminal jurisdictional component into Chapter 7B protective-order proceedings").[6]

Article 7B.001(b) provides in relevant part that an application for a protective order may be filed in a statutory county court in the county in which the applicant resides or in which an element of the alleged offense occurred. Tex. Code Crim. Proc. art. 7B.001(b)(1)(A), (C). Zimmerman testified that Caldwell had committed acts found by the trial court to constitute stalking at her house in Williamson County. *See* Tex. Gov't Code § 25.2481(4) (recognizing County Court at Law No. 4 as statutory county court of Williamson County). Accordingly, the trial court had subject matter jurisdiction over the protective-order proceeding. *See Dupuy*

---

[6] It is likewise unclear how articles 4.06 and 4.07 pertain to Caldwell's argument. Article 4.06 provides that "[u]pon the trial of a felony case, the court shall hear and determine the case as to any grade of offense included in the indictment, whether the proof shows a felony or a misdemeanor." Tex. Code Crim. Proc. art. 4.06. Article 4.07 vests county courts with original jurisdiction of certain misdemeanors. *Id.* art. 4.07. Regardless, as both statutes concern criminal proceedings, they are irrelevant to the trial court's subject-matter jurisdiction in this case.

*v. Williams*, No. 14-19-00463-CV, 2021 WL 5707430, at \*3–4 (Tex. App.—Houston [14th Dist.] Dec. 2, 2021, pet. denied) (mem. op.) (conducting chapter 7B jurisdiction analysis). We overrule Caldwell's fifth issue.

### C.     Lack of indictment and presumption of innocence

In his sixth and seventh issues, Caldwell contends that the trial court abused its discretion by "holding [him] to answer for a felony without indictment" and "rendering a judgment which treats [him] as guilty of a felony and denies him the presumption of innocence."

As discussed above, the proceeding in this case was civil, and the protective order entered against Caldwell does not amount to a criminal conviction. Because Caldwell was not charged with a criminal offense, his allegations of violations of criminal due process are without merit. *See Mahmoud v. Jackson*, No. 05-21-00302-CV, 2022 WL 2167683, at \*4 (Tex. App.—Dallas June 16, 2022, no pet.) (mem. op.) (explaining that criminal conviction is not required for protective order and that, "[t]o the contrary, the language of article 7B.003 requires a court to find whether 'there are *reasonable grounds to believe* that the applicant is the victim of'" specified offenses). We overrule his sixth and seventh issues.

### D.     Ineffective Assistance of Counsel

In his eighth issue, Caldwell contends that the trial court abused its discretion by "finding that [he] received the effective assistance of counsel guaranteed by the 6th Amendment and [Texas Code of Criminal Procedure] art. 1.051 when holding that competent counsel would not have objected to the court allowing the State to call Caldwell as its witness."

The Sixth Amendment to the United States Constitution guarantees the accused in criminal prosecutions the right "to have the assistance of counsel for his defense." U.S. Const.

14

amend. VI. Similarly, article 1.051 provides that "[a] defendant in a criminal matter is entitled to be represented by counsel in an adversarial judicial proceeding" and that "[a]n indigent defendant is entitled to have an attorney appointed to represent him in any adversary judicial proceeding that may result in punishment by confinement and in any other criminal proceeding if the court concludes that the interests of justice require representation." Tex. Code Crim. Proc. art. 1.051(a), (c). The United States Supreme Court has clarified that the Sixth Amendment "does not govern civil cases," *Turner v. Rogers*, 564 U.S. 431, 443 (2011), and that an indigent defendant's right to appointed counsel "has been recognized to exist only where the litigant may lose his physical liberty if he loses the litigation," *Lassiter v. Department of Soc. Servs. of Durham Cnty., N. C.*, 452 U.S. 18, 25 (1981); *see Ex parte Garza*, 603 S.W.3d at 496 ("[F]or the constitutional right to appointed counsel to apply, an individual must face the threat of actual imprisonment rather than a mere future threat of imprisonment."). Regarding article 1.051, the Texas Court of Criminal Appeals has noted, "'The right to counsel turns on whether deprivation of liberty may result from a proceeding, not upon its characterization as "criminal" or "civil."'" *Ex parte Gonzales*, 945 S.W.2d 830, 836 (Tex. Crim. App. 1997) (quoting *Ex parte Strickland*, 724 S.W.2d 132, 134 (Tex. App.—Eastland 1987, orig. proceeding)).

Accordingly, because protective-order proceedings are civil matters incapable of depriving a respondent of his personal freedom, *see Goldstein*, 690 S.W.3d at 291, 2024 WL 2490533, at *3, "Texas appellate courts have concluded that a protective order respondent is not constitutionally entitled to counsel," *Ex parte Garza*, 603 S.W.3d at 496–97 (listing cases). "The doctrine of ineffective assistance does not apply to civil cases when there is no constitutional or statutory right to counsel," and Caldwell may therefore not raise such a claim in the present appeal. *Donnelly v. K.T.*, No. 02-22-00183-CV, 2023 WL 4243341, at *8 (Tex.

15

App.—Fort Worth June 29, 2023, no pet.) (mem. op.) (citing *McCoy v. Texas Instruments, Inc.*, 183 S.W.3d 548, 553 (Tex. App.—Dallas 2006, no pet.) (stating that doctrine of ineffective assistance of counsel does not extend to civil cases)).  We overrule his eighth issue.

## II.     Preservation

A further four of Caldwell's issues—his habeas (issue 1), Fifth Amendment (issue 4), disciplinary violations (issue 9), and federal civil liberties (issue 13) complaints—are unpreserved for appellate review.  *See* Tex. R. App. P. 33.1(a) (requiring party to timely present complaint to trial court and obtain adverse ruling to preserve complaint for appellate review); *Bonsmara Nat. Beef Co. v. Hart of Tex. Cattle Feeders, LLC*, 603 S.W.3d 385, 396 n.22 (Tex. 2020) ("Having obtained an adverse ruling, the party's complaint is preserved for appellate review."); *Dreyer v. Greene*, 871 S.W.2d 697, 698 (Tex. 1993) ("As a rule, a claim, including a constitutional claim, must have been asserted in the trial court in order to be raised on appeal."); *Elness Swenson Graham Architects, Inc. v. RLJ II-C Austin Air, LP*, 520 S.W.3d 145, 159 (Tex. App.—Austin 2017, pet. denied) ("To preserve error for appeal, the argument made in the trial court must comport with the argument made on appeal.").

In his first issue, Caldwell contends that the trial court abused its discretion and violated article 11.11 of the Texas Code of Criminal Procedure by "refusing to hear or grant [his] petition for writ of habeas corpus at any hearing."  He asserts that the trial judge "could have heard [his] petition on July 1, as repeatedly requested, but he did not do so" and that the judge's "refusal to hear [him] out on July 1 caused the case to proceed with the ex parte restraining order extended rather than having the restraint removed and the foundation of the suit, the 2014 order, dismissed."

16

Article 11.11 provides that a trial court must schedule a hearing on a chapter 11 habeas application on "the earliest day which the judge can devote to hearing the cause of the applicant." Tex. Code Crim. Proc. art. 11.11.

Caldwell requested a hearing on his habeas application during the July 1, 2022 protective-order hearing, which was held three days after he filed the application. During the hearing, the trial court explained its reasons for not considering the application at that time:

> THE COURT: I'm not going to hear your habeas today.
>
> One, I think that's outside of my appointment. Two, you're raising issues that she's not prepared to respond to or whoever is going to respond to, I'm not sure, about stuff that happened as you just told me nine years ago. I'm not going to hear a case about evidence that was raised nine years ago unless I have some access to it and I'm authorized to do it. Two different reasons.
>
> So, I'm going to ask about that, but for now I'm here because of a protective order.

Caldwell did not object following the trial court's ruling and did not repeat his request for a hearing or ruling on the application. Thus, his challenge to the trial court's refusal to rule is unpreserved.[7] *See* Tex. R. App. P. 33.1(a).

In his fourth issue, Caldwell contends that the trial court "abused its discretion by allowing the State to call [him] as its [first] witness" in violation of the Fifth Amendment to the

---

[7] Regardless, because the trial court had not reviewed the application or the record from the 2014 proceeding; the State lacked adequate time to prepare; and Caldwell, who was not confined, subsequently requested—and was granted—appointed counsel, the trial court did not act unreasonably in refusing to consider the application on July 1st. *Cf. Wendt v. State*, No. A14-90-00160-CR, 1991 WL 251073, at *4 (Tex. App.—Houston [14th Dist.] Nov. 27, 1991, no pet.) (not designated for publication) (concluding that "the time lag between the filing of [applicant]'s 'petition' and the court's ruling was understandable, since appellant agreed to a continuance"); *Ex parte Werne*, 118 S.W.3d 833, 836 n.1 (Tex. App.—Texarkana 2003, no pet.) (determining two-month delay was "presumptively unreasonable," especially when defendant was confined).

United States Constitution and article 1, section 10 of the Texas Constitution. *See* U.S. Const. amend. V; Tex. Const. art. I, § 10. However, neither Caldwell nor his counsel objected on that basis during the protective-order hearing. To the contrary, Caldwell was admonished of his Fifth Amendment privilege by the trial court; was given the opportunity to confer with counsel; and when asked by the court whether "[h]aving been given a chance to talk to [his] counsel about [his] Fifth Amendment privileges," he was going to testify, responded, "Yes, sir. I do intend to testify." Caldwell did not assert a constitutional violation before the trial court, and he may not do so for the first time on appeal. *See Dreyer*, 871 S.W.2d at 698.

In his ninth issue, Caldwell contends that the trial court abused its discretion by failing to report counsel for the State's alleged violations of Texas Rules of Disciplinary Conduct 8.04 and 3.09 pursuant to the trial judge's duty as a lawyer under Rule 8.03. *See* Tex. Disciplinary Rules Prof'l Conduct R. 3.09(a) (prohibiting prosecutor from prosecuting or threatening to prosecute charge that he knows is not supported by probable cause), 8.03(a) (requiring lawyer having knowledge of another lawyer's violation that raises substantial question as to that lawyer's "honesty, trustworthiness or fitness as a lawyer" to report violation), .04(a) (proscribing, in relevant part, "conduct involving dishonesty, fraud, deceit or misrepresentation"), *reprinted in* Tex. Gov't Code, tit. 2, subtit. G, app. A (Tex. State Bar R. art. X, § 9). Specifically, Caldwell asserts that State's counsel "misrepresented facts in evidence" by stating during closing argument that Caldwell was at Zimmerman's house "at least eight times in three days."

Caldwell's argument on appeal does not comport with the argument presented to the trial court during the hearing on his Omnibus Motion, which involved—as part of the

18

discussion of effective representation—an alleged failure by trial counsel to question Caldwell about a purported alibi:

> THE COURT: Anything else, sir?
>
> MR. CALDWELL: Your Honor, I did want to testify addressing alibi and [trial counsel] made no showing, no attempt in either cross examination or later direct examination.
>
> THE COURT: Alibi as to what?
>
> MR. CALDWELL: The prosecution made it a point to say that there were eight, more than six, incidents where I'm alleged to have been outside of applicant Zimmerman's house.
>
> THE COURT: That was in argument, correct?
>
> MR. CALDWELL: And the bad faith argument, yes, Your Honor.
>
> THE COURT: That was in argument. Argument is not evidence. And as I ruled, I explained my ruling in some detail, I thought, that it was all based in large part on those videotapes outside of her house. Whether or not the prosecutor said eight or six, whether based on mistake or there were six times you say that I could have gone by the house, plus there was the, what we called the Pokemon incident, plus the attempt to – using the words that one of the litigants used, to lure the child out of the house, that adds up to eight. And was that a misstatement, I don't know. But that was argument. And argument was not what I based my ruling on, as I said on the record. I laid out exactly the evidence that I used for my ruling and that was not part of it.

Because Caldwell's statement that the prosecutor made a "bad faith argument"—which appeared to be understood by the trial court as a challenge to the sufficiency of the evidence—does not comport with his claim on appeal that the trial court failed to report a disciplinary violation concerning a misrepresentation of fact, nothing is preserved for our review. *See Austin Air*, 520 S.W.3d at 159.

In his thirteenth issue, Caldwell contends that the trial court abused its discretion "by violating 18 USC Sec. 242 when depriving [him] of civil liberties protected by federal law

19

because the legislature narrowed that authority with [Texas Code of Criminal Procedure] art. 7B.003(c)." He argues that the court "took the position that civil liberties may be denied as a response to criminal activity" but that "[n]o crime was charged, and none occurred." Caldwell did not raise this issue before the trial court, and it is therefore unpreserved. *See* Tex. R. App. P. 33.1(a). Moreover, by alleging a violation of a federal criminal statute, he seeks relief "which this Court cannot consider." *Haley v. Tax Appraisal Dist. of Bell Cnty.*, No. 03-00-00179-CV, 2001 WL 23149, at *2 & n.3 (Tex. App.—Austin Jan. 11, 2001, no pet.) (not designated for publication).

For these reasons, we overrule Caldwell's first, fourth, ninth, and thirteenth issues.

## III.    Constitutional Violations

In his second issue, which is multifarious, Caldwell raises three constitutional violations. First, he contends that the trial court abused its discretion by "ignoring the Fourth Amendment warrants requirement of probable cause also contained in [Texas Code of Criminal Procedure] art. 7B.052 & Sec. 9 of Tex. [B]ill of [R]ights" because "[a] protective order is a seizure under the 4th Amendment when that seizure denies a protected right or possession, as this order does." *See* U.S. Const. amend. IV. Second, he contends that the trial court "orders also violate the 1st Amendment freedom to associate with [his] child, protected under Article 4 and the 14th Amendment as a fundamental right." *See* U.S. Const. amend. XIV. And third, he contends that the "orders violate the 2nd Amendment and Sec. 23 of the bill of rights since the right is not 'regulated' by the criminal restraining order, but absolutely denied at all times and places." *See* U.S. Const. amend. II; Tex. Const. art. I, § 23. Caldwell offers no caselaw or

authority other than a general reference to the United States or Texas Constitutions in support of his claims.

Conclusory assertions of constitutional violations unsupported by citations to relevant authorities, as here, are inadequately briefed. *See* Tex. R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."); *see also Garza v. Dr. Reddy's Lab'ys*, No. 03-22-00170-CV, 2023 WL 5622078, at *2 (Tex. App.—Austin Aug. 31, 2023, no pet.) (mem. op.) ("Garza in his appellate briefing variously asserts First Amendment rights and fair-trial rights, but he does not support his assertions with citations to relevant authorities. These arguments are therefore inadequately briefed."); *Vazquez v. Bailey*, No. 03-22-00290-CV, 2024 WL 1774857, at *6 (Tex. App.—Austin Apr. 25, 2024, no pet.) (mem. op.) ("Father . . . has failed to provide any meaningful analysis or cite relevant authority beyond a reference to the Texas Constitution."); *Quested v. City of Houston*, 440 S.W.3d 275, 283 n.15 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("[Appellant] does not, however, develop this argument beyond stating the proposition and citing the United States and Texas Constitutions. This issue is therefore inadequately briefed."); *Canton-Carter v. Baylor Coll. of Med.*, 271 S.W.3d 928, 931 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (noting that failure to "provide substantive analysis of the legal issues presented results in waiver of the complaint"). We may not place ourselves in the role of Caldwell's advocate and attempt to identify and explain an alleged error on his behalf. *See Valadez v. Avitia*, 238 S.W.3d 843, 845 (Tex. App.—El Paso 2007, no pet.) ("An appellate court has no duty—or even right—to perform an independent review of the record and applicable law to determine whether there was error" and to do so, "even on behalf of a pro se

21

appellant, . . . would be [to] abandon[] our role as neutral adjudicators." (internal citation omitted)).  Caldwell's second issue is therefore waived, and we overrule it.

## IV.    Article 7B.003(c) & Evidentiary Sufficiency

A trial court must grant a protective order if it determines that there are reasonable grounds to believe that the applicant was the victim of stalking.  *See* Tex. Code Crim. Proc. art. 7B.003(b).  The Code does not define "reasonable grounds," but, addressing chapter 7B's substantively identical predecessor, we have previously determined that "[t]he burden of proof necessary for issuance of a Chapter 7A protective order is preponderance of the evidence." *Netaji v. Roberts*, 03-19-00840-CV, 2021 WL 5312489, at *5 (Tex. App.—Austin Nov. 12, 2021, no pet.) (mem. op.) (citing *Webb v. Schlagal*, 530 S.W.3d 793, 803 (Tex. App.— Eastland 2017, no pet.) (holding that "[a]fter a review of the record and cognizant of the lower 'preponderance of the evidence' standard of proof for a civil case," there was some evidence that respondent engaged in knowing behavior constituting stalking, which provided reasonable grounds for trial court to issue protective order)); *cf. Roper v. Jolliffe*, 493 S.W.3d 624, 638 (Tex. App.—Dallas 2015, pet. denied) (concluding that "the traditional standard of proof by a preponderance of the evidence applies" to family-violence protective orders and rejecting clear-and-convincing standard).

We consider Caldwell's tenth and twelfth issues together as challenges to the sufficiency of the evidence supporting the lifetime protective order.  In his tenth issue, Caldwell contends that the trial court abused its discretion by concluding that reasonable grounds existed to believe that Zimmerman was a victim of stalking.  More specifically, he argues that the court applied the wrong burden of proof in finding the existence of reasonable grounds.

22

In his twelfth claim, Caldwell contends that the trial court "abused its discretion by ruling as a matter of fact and law that mere presence 'being there,' without more, is enough to constitute felony stalking." He explains that he "did not trespass nor do any act besides *being* which would harass, so no crime occurred nor frankly was alleged. As such, [he] was not stalking [Zimmerman]."

We review a trial court's decision to grant or deny a protective order under chapter 7B of the Texas Code of Criminal Procedure for legal and factual sufficiency of the evidence. *State for Prot. of P.B. v. V.T.*, 575 S.W.3d 921, 924 (Tex. App.—Austin 2019, no pet.). When conducting a legal-sufficiency review, we consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822, 827 (Tex. 2005). To prevail, an appellant must show that no more than a scintilla of evidence supports a finding on which the opponent had the burden of proof. *See Waste Mgmt. of Tex., Inc. v. Texas Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 156–57 (Tex. 2014); *City of Keller*, 168 S.W.3d at 826. More than a scintilla of evidence exists to support a finding when the evidence enables reasonable and fair-minded people to differ in their conclusions. *Gharda USA, Inc. v. Control Sols., Inc.*, 464 S.W.3d 338, 347 (Tex. 2015).

When conducting a factual-sufficiency review, we consider all the record evidence and set aside the trial court's order only if the evidence is so weak as to make the order clearly wrong and manifestly unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). We defer to the fact finder's implicit determinations of credibility and weight to be given to the evidence. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

23

Under either standard, we may not substitute our judgment for that of the trier of fact when the evidence falls within the zone of reasonable disagreement, and the trier of fact is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *See City of Keller*, 168 S.W.3d at 816–17, 819–20, 822 (legal sufficiency); *Golden Eagle Archery*, 116 S.W.3d at 761 (factual sufficiency).

Although article 7B.003(c) provides that a conviction of or placement on deferred adjudication for certain family-violence offenses is *sufficient* to constitute "reasonable grounds," such a judgment is not *necessary* to support a finding of reasonable grounds. *See* Tex. Code Crim. Proc. art. 7B.003(c); *Morales v. A. D. W.*, No. 02-23-00073-CV, 2024 WL 482862, at *4 (Tex. App.—Fort Worth Feb. 8, 2024, no pet. h.) (mem. op.) ("[A] family violence conviction is not a prerequisite to the entry of a Chapter 7B protective order.").

In relevant part, stalking is defined in section 42.072 of the Texas Penal Code:

(a) A person commits an offense if the person, on more than one occasion and pursuant to the same scheme or course of conduct that is directed specifically at another person, knowingly engages in conduct that:

(1) constitutes an offense under Section 42.07 [Harassment], or that the actor knows or reasonably should know the other person will regard as threatening:

(A) bodily injury or death for the other person;

(B) bodily injury or death for a member of the other person's family or household[; or] . . .

(C) that an offense will be committed against the other person's property;

(2) causes the other person [or] a member of the other person's family or household . . . to be placed in fear of bodily injury or in fear that an offense will be committed against the other person's property, or to feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended; and

(3) would cause a reasonable person to:

(A) fear bodily injury or death for himself or herself;

(B) fear bodily injury or death for a member of the person's family or household[;] . . .

(C) fear that an offense will be committed against the person's property; or

(D) feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended.

Tex. Penal Code § 42.072; *see id.* § 6.03(b) (stating that "person acts knowingly, or with knowledge," with respect to nature of conduct or to circumstances surrounding conduct when he is aware of nature of conduct or that circumstances exist).

A person commits the offense of harassment if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, he, among other things, sends repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another. *Id.* § 42.07(a)(7). "Electronic communication" includes "a communication initiated through the use of electronic mail, instant message, network call, [or] a cellular or other type of telephone." *Id.* § 42.07(b)(1).

Despite the Modification Order's prohibitions against Caldwell communicating by phone with Zimmerman or coming within 300 feet of her house in Williamson County, the evidence presented at the protective-order hearing showed that he left her three voicemails and came near her house at least four times from June 3, 2022, to June 5, 2022. Indeed, Caldwell testified that on arriving in Round Rock, he rented an Airbnb approximately half a mile, or three blocks, from the house. On the morning of June 3rd, he sat in a driveway across the street from Zimmerman's house for almost 15 minutes before walking away. Later that day, he pitched a tent in the street in front of the house and sat in it for approximately 30 minutes before police arrived. The following day, he again approached the house on foot and walked in circles in the

25

street for around 10 minutes before officers once more arrived. On June 5th, he called and asked Child to meet him at the street corner. Zimmerman's husband went outside and saw Caldwell at "the top of the street." Caldwell had once told Child on a call overheard by Zimmerman that kidnapping Child was an option. During the hearing, Caldwell testified that he intended to move to the Austin area for a new job.

Zimmerman testified that Caldwell drove a white car, and surveillance video from June 3rd showed someone in a white car pull into the driveway in which he had sat and appear to bend toward the ground. Video from approximately 3:00 a.m. on June 4th depicted a white car stop in the road near her house with its hazard lights activated. The car pulled forward and stopped directly in front of the house before accelerating as another vehicle approached from behind. The white car then made a U-turn and drove away in the direction from which it had come. Zimmerman testified that she recognized the car in both videos as Caldwell's. The trial judge, however, explained that he was "not going to consider the car" because he could not see who was driving and "did not hear testimony that 'I could see the driver.'"

Caldwell previously violated the Modification Order in 2018, when, after going to a public library to see Child, he drove to Zimmerman's house and was issued a criminal trespass warning. Zimmerman testified that he "continues to claim that the order is invalid and continues to violate it." She also testified that his actions were "very erratic and harassing"; that they made her and Child afraid to leave their house; that she felt "[s]cared, terrified, harassed, [and] alarmed"; and that she was scared for her and Child's safety and believed that Caldwell might hurt them. Officer Rizzo, who responded to Zimmerman's house in June 2022, testified that she had been terrified and that her hands trembled, her "carotid artery was almost popping out of her neck," and her eyes were "wide with fear and tears."

26

Viewing the evidence under the applicable standards of review, we conclude that the evidence is legally and factually sufficient to support the trial court's finding that reasonable grounds existed to believe that Zimmerman was the victim of stalking. *See* Tex. Code Crim. Proc. art. 7B.003(b); *City of Keller*, 168 S.W.3d at 819–20, 822; *Golden Eagle Archery*, 116 S.W.3d at 761; *Cain*, 709 S.W.2d at 176. The evidence constituted reasonable grounds to believe that Caldwell on more than one occasion and pursuant to the same scheme or course of conduct that was directed specifically at Zimmerman, knowingly engaged in conduct that constituted harassment; that he should have known she would regard as threatening, and which placed her in fear of bodily injury for both her and Child; and that caused Zimmerman, and would cause a reasonable person to feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended. *See* Tex. Code Crim. Proc. art. 7B.003(b); Tex. Penal Code § 42.072. Thus, we overrule Caldwell's tenth and twelfth issues.

## V.      Duration & Modification of Protective Order

In his eleventh issue, Caldwell contends that the trial court "abused its discretion by imposing lifetime criminal penalties equivalent to felony parole not authorized by [Texas Code of Criminal Procedure] art. 7B.007(a-l) and (b-1)." He further argues that "the order omits the possibility of later amendment, which if contemplated, would require instead that the order be a temporary order with a rule nisi, not a lifetime order."

As discussed above, a chapter 7B protective order is not a criminal conviction and does not impose a punishment for past conduct. *See Goldstein*, 690 S.W.3d at 291–92. Moreover, article 7B.007(a) provides that an order "may be effective for the duration of the lives of the offender and victim or for any shorter period stated in the order." Tex. Code Crim. Proc.

art. 7B.007(a). Consequently, the trial court had authority to enter a lifetime protective order in this case. Article 7B.007(a-1), which is inapplicable to Caldwell, requires that the trial court enter a lifetime protective order when an offender *has been convicted of or placed on deferred adjudication for* an offense listed in article 7B.001(a)(1).

Caldwell's argument regarding the order's immutability is both inadequately briefed and incorrect. *Cf.* Tex. R. App. P. 38.1(i). Article 7B.007(b) allows for an adult victim of an offense listed in article 7B.001(a)(1) or the parent or guardian of a minor victim to "file at any time an application with the court to rescind the protective order." Further, "[o]n the motion of any party, the court, after notice and hearing may modify an existing protective order to exclude any item included in the order or include any item that could have been included in the order." Tex. Fam. Code § 87.001; *see also* Tex. Code Crim. Proc. art. 7B.008 (explaining that title 4 of Family Code, including section 87.001, applies to chapter 7B protective orders except as otherwise provided). Thus, although under article 7B.007(b-1)—which bars a parent who is the alleged offender subject to the protective order from filing an application to rescind—Caldwell may not file such a motion, the lifetime protective order in this case is subject to both amendment and rescission. We overrule Caldwell's eleventh issue.

## VI. Consolidation

In his fourteenth issue, Caldwell contends that the trial court "abused its discretion by refusing to consolidate cases with 09-3577-FC4 [the suit to modify the parent-child relationship] in order to allow simultaneous modification of the visitation order and any protective order." He argues that the protective order "severs [his] standing to apply for a modification that will allow visitation"; that the State "was not a necessary nor proper party to

28

this suit, in the absence of probable cause of any crime"; and that the parties and subject matter of the two causes are "inseparably intertwined."

Rule 174(a), which governs consolidation of actions, provides:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Tex. R. Civ. P. 174(a).

"Procedural matters, such as joinder and the consolidation of claims, are left to the discretion of the trial court, whose rulings will not be overturned absent an abuse of discretion," which occurs when the trial court acts "without reference to any guiding rules and principles." *Bennett v. Grant*, 525 S.W.3d 642, 653 (Tex. 2017). Under Rule 174, "[a] trial court has broad discretion to consolidate cases 'that relate to substantially the same transaction, occurrence, subject matter, or question' such that the evidence 'will be material, relevant, and admissible in each case.'" *B.D. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-20-00118-CV, 2020 WL 5100641, at *11 (Tex. App.—Austin Aug. 28, 2020, pet. denied) (mem. op.) (quoting *In re Gulf Coast Bus. Dev. Corp.*, 247 S.W.3d 787, 794 (Tex. App.—Dallas 2008, orig. proceeding)). In ruling on a motion to consolidate, "[t]he trial court should balance judicial economy and convenience against 'the risk of an unfair outcome because of prejudice or jury confusion' and should not consolidate if it will prejudice the complaining party." *Id.* (quoting *Gulf Coast*, 247 S.W.3d at 794–95).

The trial judge explained his reasoning when denying Caldwell's motion to consolidate:

I have already issued an order. I am not going to consolidate the order with what may be a new case. That Judge may choose to look at that order. That Judge may look at that order and want to change custody, I don't know. But I'm not going to consolidate this case with that, interest of the child versus did stalking occur.

It's a different matter, plus just mechanically it is an order already issued, whereas apparently the other is an attempt to modify custody. I'm not going to consolidate these cases. I don't think you met the standard for that, and so, I'm not going to.

The State argued that the parties to the two causes were also different—the State was not a party to the suit to modify the parent-child relationship, and Zimmerman was not a party to the protective-order proceeding because the State had filed the application on her behalf. Despite Caldwell's protestation, the trial judge determined that the custody suit did not fall within the scope of his appointment and, when Caldwell asserted that the protective order was not in Child's best interest, responded that there was a "[b]ig difference" between proceedings under chapter 153 of the Texas Family Code, which provides that "[t]he best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child," and chapter 7B protective-order proceedings. Tex. Fam. Code § 153.002.

The State is correct that the parties in the two causes are different. Moreover, the purpose of chapter 7B protective orders is not to determine conservatorship, possession, or access, but to protect victims of various criminal offenses, including stalking. *See Netaji*, 2021 WL 5312489, at *14. Chapter 7B is therefore not concerned with the best interest of the child but rather "whether there are reasonable grounds to believe that the applicant is the victim of sexual assault or abuse, indecent assault, stalking, or trafficking." *Compare* Tex. Fam. Code § 153.002, *with* Tex. Code Crim. Proc. art. 7B.003(a). In addition to the causes' different parties and subject matter, the trial judge noted that he was not familiar with the custody case and that

the protective-order proceeding would no longer be pending once he ruled on the Omnibus Motion. *See* Tex. R. Civ. P. 174(a); *cf. Thomas v. Oldham*, 895 S.W.2d 352, 356 (Tex. 1995) (suit ends when trial court's plenary power expires thirty days after overruling motion for new trial). Thus, consolidation would not further judicial economy or convenience. *See B.D.*, 2020 WL 5100641, at *11.

For these reasons, the trial court did not abuse its discretion by denying Caldwell's motion to consolidate. *See Bennett*, 525 S.W.3d at 653. We overrule his fourteenth issue.

## VII.  Original Habeas Application

Caldwell filed in this Court an original habeas application in which he asks that we vacate the lifetime protective order, Modification Order, and Vexatious Litigant Order. He asserts that he is entitled to habeas relief pursuant to chapter 11 of the Texas Code of Criminal Procedure. *See generally* Tex. Code Crim. Proc. art. 11.

The original jurisdiction of the Court is set by the Texas Constitution, which provides that we "shall have such other jurisdiction, original and appellate, as may be prescribed by law." Tex. Const. art. V, § 6. Our original habeas corpus jurisdiction is limited to cases where a person's liberty is restrained because he or she has violated an order, judgment, or decree in a civil case. *See* Tex. Gov't Code § 22.221(d); *In re Reece*, 341 S.W.3d 360, 364 n.3 (Tex. 2011). Courts of appeals have no original habeas jurisdiction in criminal matters. *In re Ayers*, 515 S.W.3d 356 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *Dodson v. State*, 988 S.W.2d 833, 835 (Tex. App.—San Antonio 1999, no pet.) ("The courts of appeals have no original habeas corpus jurisdiction in criminal matters; their jurisdiction is appellate only.").

Original jurisdiction to grant a writ of habeas corpus in a criminal case is vested in the Court of Criminal Appeals, the district courts, the county courts, or a judge of those courts. Tex. Code Crim. Proc. art. 11.05; *see Ayers*, 515 S.W.3d at 356. "A writ of habeas corpus pursuant to Article 11 of the Code of Criminal Procedure is a criminal proceeding despite its availability to persons not accused of crimes." *Gibson v. State*, 921 S.W.2d 747, 753 (Tex. App.—El Paso 1996, pet. denied); *see Ex parte Rieck*, 144 S.W.3d 510, 516 (Tex. Crim. App. 2004) (categorizing chapter 11 habeas proceedings "as 'criminal' for jurisdictional purposes").

Because we lack original habeas jurisdiction in criminal cases, and Caldwell does not allege, much less show, that his liberty is restrained because he violated an order, judgment, or decree in a civil case, we lack jurisdiction over his application. *See* Tex. Gov't Code § 22.221(d); *In re Weller*, No. 09-19-00108-CV, 2019 WL 1715967, at *1 (Tex. App.—Beaumont Apr. 18, 2019, orig. proceeding) ("We lack original habeas jurisdiction to consider an order that does not involve a contemnor's violation of a previous court order."). Accordingly, we dismiss Caldwell's original application for writ of habeas corpus for want of jurisdiction.

## CONCLUSION

Having overruled each of Caldwell's issues and dismissed his original habeas application, we affirm the trial court's lifetime protective order.[8]

---

[8] We deny Caldwell's pending motions for sanctions and for leave to file a second supplemental brief. *See* Tex. R. App. P. 38.7.

 

                                     _____

                                     Edward Smith, Justice

Before Justices Baker, Kelly, and Smith

Affirmed in Part; Dismissed in Part

Filed:   August 23, 2024